**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William Lewis FORD, Defendant–
Appellant,**

**and**

**Patrick Roberts, Defendant–Appellant.**

No. 99–1684, 99–1867.

United States Court of Appeals,
Sixth Circuit.

July 25, 2001.

Before BOGGS and CLAY, Circuit

Judges, and GWIN,* District Judge.

CLAY, Circuit Judge.

Defendants, William Lewis Ford and Patrick Roberts, appeal the judgments of the district court sentencing them pursuant to Rule 11 guilty pleas to Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. In Case No. 99–1684, Ford contests the district court's denial of a motion to withdraw his guilty plea as well as the court's judgment of sentence. In Case No. 99–1867, Roberts challenges the district court's failure to allow him to withdraw his guilty plea and the resulting sentence of life imprisonment. For the reasons that follow, we AFFIRM both judgments.

I.

On May 7, 1998, a grand jury in the Eastern District of Michigan returned a 31–count Fifth Superseding Indictment against Defendants William Ford and Patrick Roberts along with seventeen other co-defendants. One of the co-defendants was subsequently murdered. Several weeks prior to trial, some of the surviving· co-defendants approached the government and inquired about the possibility of a plea-bargain. The government indicated that it would only negotiate if it could get a "package deal" in which all of the remaining defendants also pleaded guilty, thereby allowing the government to avoid the expense, time and effort of a long trial involving wiretap tape recordings, undercover officer testimony, surveillance reports, informants and cooperating witnesses. On the eve of trial, all of the remaining defendants entered Rule 11 plea agreements.

In the plea agreements, the government agreed to dismiss many of the counts against the defendants and offered to move for a downward departure under the sentencing guidelines for "substantial assistance in the investigation or prosecution of another person" for each defendant who provided truthful information, even if actual testimony was not required. Ford's plea agreement provided that his sentence should not exceed 188 months, the high end of the estimated sentencing guidelines range for an offense involving 500 grams of cocaine base ("crack"). If, in the government's estimation, Ford provided substantial assistance, the government agreed to move for a downward departure to reduce his sentence to 108 months. Roberts' plea agreement provided that, in exchange for his cooperation and substantial assistance, the government would request that the district court depart downward from the mandatory sentence of life imprisonment Roberts would otherwise face under 21 U.S.C. § 841(b)(1)(A).

At their plea hearings, each defendant provided a factual basis with respect to each count against them. The district court advised each defendant of his rights that would be waived, questioned them with respect to their understanding of the terms of their respective plea agreements and also questioned each defendant regarding whether their pleas were the results of any threats, undue influence or duress. Ford specifically denied being threatened or coerced into accepting the package deal plea agreement, and indicated that he accepted the agreement because it was in his own best interest. Upon receiving satisfactory responses, the district court accepted both defendants' guilty pleas as knowing and voluntary.

---

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

Some eighty-three days after pleading guilty, Ford moved to withdraw his guilty plea, alleging that he entered the plea as a result of an illusory plea bargain, pressure and intimidation from other defendants, a misunderstanding of the facts of his case and the contents of his plea agreement, and his trial counsel's lack of preparation. Ford also filed objections to the Presentence Investigation Report ("PSIR"), one of which indicated that he should not be held responsible for 500 grams of cocaine base. At Ford's May 20, 1999, sentencing hearing, his counsel requested an evidentiary hearing to clarify what he termed factual issues concerning the guilty plea. But the district court denied Ford's motion to withdraw his guilty plea without permitting him the benefit of a hearing. The court concluded that his motion for withdrawal was untimely; he was well-acquainted with the criminal justice system due to his prior indictments, guilty pleas and felony drug convictions; he did not consistently maintain his innocence; he had specifically denied being coerced into accepting the guilty plea; and the government would suffer "tremendous prejudice" if the motion to withdraw were granted. The district court further indicated that any misunderstanding, misrepresentation or lack of communication between Ford and his counsel could not form a basis for withdrawing his plea.

The district court also overruled Ford's objections to the PSIR. In doing so, the court first determined that Ford was bound by his stipulation in the Rule 11 Plea Agreement regarding the quantity of drugs to be used in the calculation as well

as other testimony received during a pretrial suppression hearing. After determining that the other objections did not affect the guideline range, the court sentenced Ford to a term of 152 months imprisonment, which was within the applicable 135–168 month guideline range, to be followed by 5 years of supervised release.

On July 8, 1999, Roberts' sentencing hearing took place. At that time, the court accepted his plea agreement; however, the government announced that it would not move for a downward departure, citing conflicting information provided by Roberts after entry of his guilty plea.[1] Roberts did not seek to withdraw his guilty plea and the district court sentenced him to life imprisonment.

## II.

### A.

On appeal, Ford contests the district court's denial of his motion to withdraw his guilty plea as well as its refusal to grant him an evidentiary hearing. This Court reviews the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Durham*, 178 F.3d 796, 798 (6th Cir.1999); *United States v. Alexander*, 948 F.2d 1002, 1003 (6th Cir.1991).

▬▬ Pursuant to FED. R. CRIM. P. 32(e), if a motion to withdraw a guilty plea is made prior to sentencing, a court "may permit withdrawal of [a] plea upon a showing by the defendant of any fair and just reason." The withdrawal of a guilty plea prior to sentencing is not an absolute right

---

1. Roberts met with the government to provide information on four occasions. The government determined that he provided false and inconsistent information concerning the alleged criminal activities of others at each of these meetings. For example, at one meeting Roberts claimed that he had no firsthand knowledge that a particular suspect in New York was a drug dealer. However, when questioned by a government polygraph examiner, Roberts stated that he had personally seen this suspect delivering drugs. (J.A. at 554–59.)

but is a matter within the discretion of the district court. A defendant has the burden of proving that the withdrawal is justified. *United States v. Riascos–Suarez*, 73 F.3d 616, 621 (6th Cir.1996) (citing *United States v. Stephens*, 906 F.2d 251, 252 (6th Cir.1990)). Although the federal rules do not establish criteria for determining whether a defendant's reasons for vacating his plea are "fair and just," this Court set forth the relevant considerations in *United States v. Spencer*, 836 F.2d 236 (6th Cir. 1987):(1) the length of time between the guilty plea and the filing of the motion to withdraw; (2) the defendant's reason for not presenting the grounds earlier; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances surrounding the plea, the nature and background of the defendant, and whether the defendant has admitted guilt; and (5) any potential prejudice to the government, although a showing of prejudice is not necessary. *Id.* at 238–40. In *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir.1998), this Court added the defendant's prior experience with the criminal justice system as a sixth factor. Upon reviewing the record, we hold that Ford did not articulate reasons to merit withdrawal of his plea.

First, the amount of time elapsed is significant. "The shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir.1987). Ford waited until eighty-three days after the entry of his plea to file the formal motion to withdraw his plea. This court has previously found even shorter periods of delay to be problematic. *See, e.g., Durham*, 178 F.3d at 798–99 (denying motion to withdraw a guilty plea where defendant waited approximate-ly seventy-seven days after entering his plea); *United States v. Baez*, 87 F.3d 805, 807 (6th Cir.1996) (citing a sixty-seven day delay as the strongest factor supporting the denial of a motion to withdraw); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir.1988) (determining that a fifty-five day gap was a "lengthy delay").

Moreover, Ford's proffered reason for not moving for withdrawal sooner is unpersuasive. Ford contends that he did not move earlier because his counsel failed to respond to his February 10, 1999, and February 18, 1999, letters indicating his desire to withdraw the guilty plea. The record does reflect that Ford sent a letter to his counsel as early as 34 days after entry of his January 7, 1999, guilty plea. The record also reflects that Ford submitted letters directly to the district court on March 2, 1999, and March 30, 1999. Yet, even this shorter period of delay is significant in light of this Court's precedent. Furthermore, while these various letters all expressed Ford's desire to withdraw from the guilty plea, they focused mostly on his fear that he would not obtain a downward departure for substantial assistance and his frustration at not being able to challenge the amount of cocaine that he agreed, in the Rule 11 plea agreement, was involved in the offense.

For example, Ford's February 10, 1999, letter to his counsel indicated that he wished to withdraw his guilty plea because he "did not think it would be right for him to plead in light of the amounts the government was attributing to him." (J.A. at 500.) In addition, in his letter to the court dated March 2, 1999, Ford stated that he felt his plea was not knowing and voluntary because he pleaded guilty under the assumption that a "challenge to the drug amounts [he was] alleged to be held accountable for was embraced by the promise." (J.A. at 508.) Ford further indicated

in that letter that "if the government is not going to honor its initial promise and otherwise allow me to challenge the inaccurate drug amounts, I would be better off withdrawing my plea in order that I may challenge the inaccurate drug amounts." (J.A. at 508.)

These concerns reflect merely tactical considerations that cannot justify withdrawal of a properly entered guilty plea. The purpose of Rule 32(e) is "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Alexander*, 948 F.2d at 1004 (internal quotations and citations omitted). Ford's first claim of actual innocence did not come until his March 30, 1999, letter to the court, over two months after his guilty plea. Instead of steadfastly maintaining his innocence, Ford was actually seeking the type of tactical advantage that cannot form the basis for withdrawal of a guilty plea.

■ Furthermore, the circumstances of Ford's guilty plea do not call into question its validity.[2] Ford contends that his plea was based upon an unfulfilled and illusory promise of a lighter sentence made by the government. But this simply is not the case. Ford has not provided any factual or legal support for the notion that the government acted wrongfully by offering and then declining to move for a downward departure for substantial assistance. Ford had been informed of the terms of his plea agreement and even discussed them with his attorney prior to pleading guilty. Both he and his counsel knew the terms of his

plea called for him to cooperate completely and truthfully such that, in the government's estimation, a § 5K1.1 reduction motion would be warranted. There is no evidence that Ford was ever promised that he would automatically receive the benefit of a reduction. Therefore, no promise has been left unfulfilled by the government. In fact, Ford does not even argue that he has established eligibility for the downward departure. Instead, he merely claims that the deal he made in his plea agreement is unfair. However, a plea bargain based upon the hope of a more lenient sentence is not inherently unfair. *Carwile v. Smith*, 874 F.2d 382, 385–86 (6th Cir. 1989). Unfulfilled subjective expectations of counsel and a defendant regarding the possible length of sentence do not render an otherwise valid plea involuntary. *Spinelli v. Collins*, 992 F.2d 559, 561 (5th Cir.1993); *Stout v. United States*, 508 F.2d 951, 953 (6th Cir.1975). Ford's fear that he might not receive a downward departure is therefore not a valid basis for withdrawing his guilty plea.

■ Ford also argues that he was coerced by his co-defendants into accepting the group plea arrangement. He claims that he was not part of the group that originally sought a plea bargain and that he was subsequently coerced into accepting the plea agreement by one of his co-defendants. Prior to sentencing, Ford's trial counsel contended that he personally overheard a conversation in which that co-defendant attempted to convince Ford to join the plea deal. He also claimed to be in the vicinity when the group deal was offered to the defendants and that at the time there was a tremendous amount of pressure on Ford as well as the other co-

2. "In determining whether there is a fair and just reason to grant a motion to withdraw a plea, the district court must review all the circumstances surrounding the original en-

trance of the plea as well as the motion to withdraw." *Triplett*, 828 F.2d at 1197 (6th Cir.1987).

defendants, which they placed on each other. However, as the government notes, Ford specifically denied that he was coerced on at least three occasions. First, when he pleaded guilty before the court, Ford was warned that his answers were subject to the penalty of perjury; yet, he still claimed that he was not induced or threatened into pleading guilty. (J.A. at 586.) In addition, Ford completed a Guilty Plea Questionnaire shortly before he was sentenced. One question on that form inquired whether his plea was the result of "undue influence or duress." Ford responded "No" in his own writing. Finally, the prosecutor specifically asked Ford whether his contact with his co-defendants had influenced his decision to enter a guilty plea or whether he was pleading because it was in his own best interest. Ford, in the presence of counsel, responded in the affirmative as to the latter circumstance. (J.A. at 589–90.)

While acknowledging that a declaration of guilt carries with it a presumption of truthfulness that binds a defendant, *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.1985), Ford argues that "[i]t is no surprise that a person under duress of a coerced decision would, just a few days later, with the real threat of reprisal by those who did the coercing would go into court [sic] deny that he was pressured into his decision and comply with the program by pleading guilty." Appellant's Br. at 17. He urges the Court to look past his subjective state of mind and instead consider the acceptability of the external forces that allegedly influenced his decision to plead guilty. To this end, he claims that guilty pleas made in consideration of lenient treatment of others should be scrutinized more closely insofar as they pose a greater danger of coercion.

However, plea agreements that are contingent upon the pleas of another are not inherently coercive. *United States v. Usher*, 703 F.2d 956, 959 (6th Cir.1983) (finding no justification for withdrawal of a guilty plea where the ability of a defendant's wife to plead was conditioned upon the defendant's own plea). "A guilty plea is not constitutionally involuntary simply because it is the end result of the plea bargaining process." *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir.1988) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)). This Court has merely advised that guilty pleas that affect others be taken with "special care." *Usher*, 703 F.2d at 958 (citing *Bordenkircher*, 434 U.S. at 364 n. 8, 98 S.Ct. 663). Ford does not assert that special care was not taken in this case. Such a contention would be meritless in any event given the efforts of both the district court and the government to ensure that the record reflected the voluntariness of the guilty plea. At the sentencing hearing, the district court judge even stated the great lengths he takes to be sure that a defendant's plea is voluntary, including observing a defendant's body language and expressions as well as his spoken words. (J.A. at 508.)

Furthermore, "where a defendant is aware of the condition or reason for a plea withdrawal, at the time the guilty plea is entered, a case for withdrawal is weaker." *Spencer*, 836 F.2d at 239. The first communication that alleged coercion by Ford's co-defendants was the instant motion, which was filed eighty-three days after entry of his guilty plea. If there was indeed intimidation in the case at bar, both Ford and his counsel knew about it all along; yet, they waited almost three months to bring this alleged coercion to light. This unexplained delay undermines the credibility of Ford's claim.

Ford's nature, background and previous exposure to the criminal justice system

also militate against permitting withdrawal of his guilty plea. At the time he pleaded guilty in federal court, Ford had two prior convictions pursuant to guilty pleas to felony drug offenses in Michigan state courts as well as a misdemeanor shoplifting conviction. (PSIR, J.A. at 652–53.) Ford attempts to distinguish his state court pleas, arguing that the instant case is his first exposure to the federal criminal justice system. He notes that in Michigan courts a defendant may withdraw a guilty plea as of right. *See People v. Killebrew*, 416 Mich. 189, 330 N.W.2d 834, 842 (Mich. 1982). But this claim is only another effort by Ford to express his confusion regarding the nature of the plea agreement, which we have already rejected as a basis for withdrawal of the guilty plea.

■■ We also reject Ford's challenge to the district court's conclusion that the government would be subjected to "tremendous prejudice" if the motion to withdraw were granted. We agree with the district court's assessment that the package deal for which the government bargained would be jeopardized if the motion were granted on these facts. But even absent a showing of prejudice, Ford would not necessarily prove his case on appeal; while prejudice to the government, or the lack thereof, is one factor to be considered in ruling on a motion to withdraw a guilty plea, a lack of prejudice does not require that the motion be granted. *United States v. Fountain*, 777 F.2d 351, 358 (7th Cir. 1985).

■ In addition, we decline to address Ford's contention that his counsel intimidated him into accepting the guilty plea, which we construe as an ineffective assistance of counsel claim. Generally, such claims are not cognizable on direct appeal where, as here, the record is inadequate to permit review. Inasmuch as the record before the Court contains no mention of the discussions between Ford and his trial counsel, this claim cannot be decided on its merits. Instead, this claim would be more properly raised in a motion to vacate under 28 U.S.C. § 2255. *United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir.1996).

■ Based upon these facts, it is evident that Ford has not provided a sufficient explanation for his tardy filing. For the same reasons articulated above, Ford was also not entitled to an evidentiary hearing prior to a decision on the motion to withdraw his guilty plea. "The courts need not conduct a hearing when the allegations contained in the motion to withdraw the plea are mere conclusions or are inherently unreliable." *Fountain*, 777 F.2d at 358; *see also Moody v. United States*, 497 F.2d 359, 362–63 (7th Cir.1974) (holding that a bare-bones allegation that a defendant had been promised a shorter sentence of imprisonment if he entered a guilty plea was insufficient to require an evidentiary hearing on a motion to withdraw the plea). As we have discussed, Ford's allegations are merely unsupported assertions that the government cheated him or that he was coerced by some nongovernmental source. An evidentiary hearing was therefore unnecessary to adjudicate his claims.

### B.

Ford also contends on appeal that the district court violated his right to due process by considering undisclosed information at his sentencing hearing. Specifically, he claims that the court erred by considering information obtained from wiretap tapes, video surveillance tapes, and the debriefings of several co-defendants who supported the prosecution's theory that Ford was a drug dealer and an enforcer for the drug ring. Ford claims that although he was aware that the co-defendants claimed that he was involved, he was not aware of the extent of

the information obtained in the government debriefings of the co-defendants. He complains that because the details of this information were not included in the PSIR, he had no notice that the extensive involvement attributed to him by the co-defendants would be considered in any way at the sentencing hearing. Therefore, Ford argues, he had no ability to contest this information by cross-examination or to present any contrasting evidence.

The government acknowledges that it used this information. However, Ford failed to object to this alleged violation at the sentencing hearing. He therefore urges this Court to consider his claim under the plain error doctrine. Federal Rule of Criminal Procedure 52(b) grants appellate courts limited power to correct errors that were forfeited because they were not timely raised before the district court. The authority created by Rule 52(b) is circumscribed. There must first be an error, and, second, that error must be considered "plain." In addition, the plain error must affect a defendant's substantial rights. If all three factors are present, this Court must determine whether this is an appropriate case in which to exercise its discretion to correct Ford's procedural forfeiture. *United States v. Hayes,* 171 F.3d 389, 391–92 (6th Cir.1999). The Court "should not exercise that discretion unless the [forfeited] error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (internal quotations and citations omitted). We decline to exercise that discretion with respect to this issue.

■ Even assuming that Ford could satisfy the first two requirements, he cannot show that the district court's actions affected the outcome of the proceedings. *See Olano,* 507 U.S. at 734, 113 S.Ct. 1770.

This Court has recognized that the "use of undisclosed evidence against a criminal defendant ... is the type of error that may undermine the fairness of a proceeding and that certainly tarnished the public reputation of judicial proceedings." *Hayes,* 171 F.3d at 395 (citing *United States v. Curran,* 926 F.2d 59, 61–62 (1st Cir.1991)). However, in *United States v. Patrick,* 988 F.2d 641 (6th Cir.), *cert. denied,* 510 U.S. 845, 114 S.Ct. 136, 126 L.Ed.2d 99 (1993), we found that the sentencing court's reliance on such extraneous information was harmless because the information was mostly cumulative of other evidence properly before the court. The same is true in the case at bar. Ford argues that he was not a part of the drug conspiracy with the other co-defendants. He also objects to the 500–gram drug quantity—the same objection he attempted to use as a basis for withdrawing his guilty plea. Yet, in his Rule 11 plea agreement, Ford specifically admitted that he was involved in drug transactions with the same co-defendants. He was therefore on notice that his relationship to the other members of the drug ring would be at issue. Moreover, the court relied upon Ford's own stipulation in the plea agreement that the drug quantity involved was 500 grams. Therefore, advance notice of this information would not have afforded Ford "any additional incentive or ability to challenge the accuracy of the evidence." *Patrick,* 988 F.2d at 648.

Inasmuch as Ford cannot point to any evidence that may have affected his sentence, any error must be deemed harmless and the challenge to his sentence is without merit. FED. R. CRIM. P. 52(a).

### III.

Roberts has framed his appeal as a challenge to the district court's failure to allow withdrawal of his guilty plea. He contends that the district court should have allowed him to withdraw his guilty plea when the government decided not to move for a

downward departure in his favor. We disagree.

The terms of Roberts' plea agreement provided that he would be able to withdraw his guilty plea if the court rejected his plea agreement, which it did not do. Moreover, unlike Ford, Roberts never filed a motion to withdraw his guilty plea [3] and has therefore failed to preserve this issue for direct appellate review. *United States v. Cullens,* 67 F.3d 123, 124 (6th Cir.1995). This Court has held there is an exception to the waiver requirement when the district court has committed plain error. *See, e.g., United States v. Bashara,* 27 F.3d 1174, 1178 (6th Cir.1994) (considering under plain error doctrine a claim by defendant, argued for the first time on appeal, that he would not have voluntarily waived his right to trial if the district court had notified him that he was pleading guilty to a crime that carried a mandatory minimum five-year prison term), *cert. denied,* 513 U.S. 1115, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995), *superseded by statute as stated in United States v. Caseslorente,* 220 F.3d 727, 734 (6th Cir.2000). However, Roberts' claim is without merit.

██ Roberts' plea agreement specified that the decision whether to file a § 5K1.1 motion was within the full discretion of the prosecutor. *See United States v. Head,* 927 F.2d 1361, 1376 (6th Cir.1991) (acknowledging that prosecutors have discretion in whether to move for downward departures). Roberts and his counsel knew the terms of his plea called for him to cooperate completely and truthfully such that in the government's estimation a § 5K1.1 reduction motion would be warranted. More importantly, Roberts knew that he faced a minimum life sentence based upon his prior drug offenses unless he cooperated fully. Having this knowl-

edge, Roberts still entered into a guilty plea. There is no evidence that Roberts was ever promised that he would automatically receive the benefit of a reduction.

Roberts has failed to provide any factual or legal support for his contention that the government acted wrongfully by offering and then refusing to move for a downward departure for substantial assistance. Roberts contends that his plea was involuntary because he was unaware of the type of information that the government sought to obtain. He claims that the government expected him to discuss information regarding the alleged criminal activity of a Detroit police officer, which he could not provide. Roberts argues that if he had known he would have had problems fulfilling this expectation he would not have agreed to the terms of the plea agreement and would have instead proceeded to trial. He also claims that the statements he made during his first debriefing were not truly contradictory. However, even accepting these assertions as true, they do not explain why Roberts provided inconsistent information during his other debriefing sessions, thereby depriving him of eligibility for the downward departure.

Inasmuch as he did not contest the validity of his plea until the sentencing hearing, the very nature of Roberts' claim works against him. Of course, it was not until his sentencing hearing that Roberts discovered that the government would not move for a downward departure. However, that refusal alone is an insufficient reason to withdraw a guilty plea, for it demonstrates that his concern was merely tactical. *Cf. Head,* 927 F.2d at 1376 (holding that a defendant who did not attempt to withdraw plea until after his testimony that led the government to announce its intention not to move for a reduction was

---

**3.** If a motion to withdraw a guilty plea is made after sentencing, the plea "may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255." FED. R. CRIM. P. 32.

not entitled to withdraw his plea after the government gave notice that it did not intend to move for a downward departure); *see also Alexander*, 948 F.2d at 1004. We believe Roberts has attempted to withdraw his plea only because the government gave notice that it did not intend to move for a downward departure. In addition, Roberts has not maintained his innocence, further supporting the notion that his concern was strategic. Defendants may not wait until the eleventh hour to withdraw plea agreements that are, by all indications, voluntarily entered. Thus, the judgment imposed by the district court must stand.

## IV.

For the foregoing reasons, we AFFIRM the district court's judgments as to the convictions and sentences of both defendants.