**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0293n.06

Nos. 08-4140/09-3207

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

*May 05, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| BILLY JACK FITZMORRIS, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Before: MOORE and WHITE, Circuit Judges; VARLAN, District Judge.[*]

**HELENE N. WHITE, Circuit Judge.** Pursuant to a Plea Agreement, Defendant Billy Jack

Fitzmorris pleaded guilty of conspiracy to possess with intent to distribute narcotics, and possession

of a firearm in furtherance of a drug-trafficking offense. Before Fitzmorris was sentenced on these

charges, he escaped from custody and committed a series of other crimes, including bank robbery

and hostage taking. In this consolidated appeal, Fitzmorris challenges the district court's denial of

his motion to withdraw his guilty pleas in the first case, and the procedural reasonableness of the

sentences imposed in both cases. We **AFFIRM**.

**I. BACKGROUND**

_____

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

-1-

**A.      Drug and Firearms Offenses (No. 08-4140)**

On April 21, 2005, while on parole from a state sentence, Fitzmorris was apprehended in possession of marijuana, cocaine powder and a stolen firearm.  A search of Fitzmorris's residence yielded more drugs and another stolen gun.  On July 6, 2006, Fitzmorris was charged with:  (I) conspiracy to possess with intent to distribute over 500 grams of cocaine and over 5 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)-(iii) and 846; (II, VIII) possession of firearms in furtherance of a drug-trafficking crime, pursuant to 18 U.S.C. § 924(c)(1)(A)(i), (c)(1)(C)(i); (III, IX-X) felon in possession of firearms and ammunition under 18 U.S.C. §§ 922(g)(1), 924(a)(2); (IV-VII) possession with intent to distribute cocaine, marijuana, and cocaine base, all in violation of 18 U.S.C. §§ 841(a)(1), (b)(1); (XI) possession of cocaine, pursuant to 21 U.S.C. § 844(a); and (XII) criminal forfeiture under 18 U.S.C. § 924(d)(1).

On January 29, 2007, Fitzmorris signed a written Plea Agreement pursuant to which he pleaded guilty to Counts I and II.  On February 16, 2007, he met with his probation officer and signed the following written statement:  "I accept full responsibility for the conduct underlying my pleas of guilty before Judge Frost.  I regret becoming involved in narcotics trafficking and blame only myself.  I am truly remorseful and accept complete responsibility for my actions." (Presentence Investigation Report for Drug Offense [hereinafter 2006 PSR] at ¶¶ 51-52.)

On April 2, 2007, Fitzmorris escaped from custody and engaged in a day-long crime spree, the details of which are discussed below.  Then, on May 30, 2007, the day before he was scheduled to be sentenced in his drug case, Fitzmorris moved to withdraw his pleas, claiming that they resulted from coercion, that he was misled by his attorney and that the Government had breached the terms

of the Plea Agreement. The district court took the motion under advisement and granted Fitzmorris's attorney's motion to withdraw from the case. Fitzmorris renewed his motion through substitute counsel. On June 5, 2008, after an evidentiary hearing, the district court denied Fitzmorris's motion to withdraw his pleas.

Fitzmorris's Presentence Investigation Report ("PSR") determined that, due to prior convictions of burglary and burglary/robbery, Fitzmorris was a career offender under the U.S. Sentencing Commission Guidelines ("the Guidelines"). As a career offender, Fitzmorris's Guidelines sentencing range for Count I was 360 months to life, with 60 additional months to be served consecutively on Count II, pursuant to 18 U.S.C. § 924(c)(1)(A)(i). On August 14, 2008, the district court sentenced Fitzmorris to 360 months on Count I, the bottom of the Guidelines range, and 60 months on Count II, to be served consecutively.

**B.      Escape and Related Offenses (No. 09-3207)**

On the morning of April 2, 2007, while awaiting sentencing in his drug and firearms cases, Fitzmorris was taken to St. Elizabeth Hospital in Youngstown, Ohio, to receive medical attention. Using a pair of toenail clippers he smuggled into the hospital, Fitzmorris cut through the plastic cuffs that restrained his wrists, overpowered a corrections officer and grabbed his service revolver. Now armed, Fitzmorris exchanged uniforms with the officer, threatened two hospital employees and three other officers into submission, and escaped from the hospital. Once outside, Fitzmorris hijacked a car and its occupant, and headed for Columbus on the interstate (the owner of the car escaped during a short stop). Later that day, in the Colombus suburbs, Fitzmorris robbed two separate banks at gunpoint, collecting over $50,000. When located by police, Fitzmorris led them on a high-speed

chase that ended when his vehicle crashed into a parked van. Unhurt and undeterred, Fitzmorris abandoned the stolen money and gun, and fled on foot to a nearby house occupied by an accounting office. After kicking down the door, Fitzmorris dragged a female employee to the top floor and kept her hostage for most of the afternoon, until he willingly surrendered.

In an indictment filed June 23, 2008, Fitzmorris was charged with seven additional counts: (I) escape under 18 U.S.C. § 751(a); (II, IV) armed bank robbery pursuant to 18 U.S.C. §§ 2113(a), (d); (III, V) possession of a firearm during crimes of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A), (c)(1)(C)(i); (VI) felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and (VII) hostage taking, in violation of 18 U.S.C. § 1203. On September 17, 2008, a jury convicted Fitzmorris of all counts.

The PSR again classified Fitzmorris as a career offender, resulting in a presumptive Guidelines range of 360 months to life for his escape, robbery, felon-in-possession and hostage-taking convictions. However, only the hostage-taking offense actually qualified for such a sentence; the escape, felon-in-possession and bank-robbery convictions were statutorily limited to 60, 120 and 300 months, respectively. Fitzmorris's firearm offenses each carried consecutive, mandatory sentences of at least 300 months.

On February 23, 2009, the district court imposed concurrent sentences of 60 months on Count I (escape), 300 months on Counts II and IV (bank robbery), 120 months on Count VI (felon in possession of a firearm) and 360 months on Count VII (hostage taking). The court imposed the statutory maximum for each conviction except the hostage-taking offense, for which it sentenced Fitzmorris to the lower end of the Guidelines range. Fitzmorris also received the statutory minimum

of 300 months each for Counts III and V (firearms offenses), to be served consecutively to the other counts. Fitzmorris's overall sentence was 80 years, in addition to the 35 years he received in his drug and firearms cases.

## II. DISCUSSION

Fitzmorris raises two issues on appeal. First, he claims that the district court abused its discretion by denying his motion to withdraw his guilty pleas in the drug and firearms cases. Second, he argues that the court treated the Guidelines as mandatory when sentencing him in both cases.

### A.     Withdrawal of Guilty Pleas

Federal Rule of Criminal Procedure 11(d)(2)(B) allows a defendant to withdraw a guilty plea after its acceptance by the trial court and before sentencing if he "can show a fair and just reason for requesting the withdrawal." The purpose of this Rule is "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010) (*quoting United States v. Ellis*, 470 F.3d 275, 280-81 (6th Cir. 2006)) (other citation omitted). The burden is on the defendant to present proper grounds for granting the motion. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996).

This Court has held that when determining whether to grant a defendant's motion to withdraw a guilty plea, district courts must consider:

(1) the amount of time that elapsed between the plea and the motion to withdraw it;

(2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (*quoting United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *abrogated in part by statute on other grounds as stated in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000)). This list is not exhaustive, and the relative importance of each factor is dependent upon the circumstances of each particular case. *Id.* (*citing United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987)).

This Court reviews the denial of a motion to withdraw a guilty plea for abuse of discretion. *Id.* "A district court abuses its discretion where 'it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.'" *Id.* (*quoting United States v. Spikes*, 158 F.3d 913, 927 (6th Cir. 1998)).

The district court held an evidentiary hearing at which Fitzmorris testified and called two witnesses. Based on these testimonies, the court concluded that every *Bashara* factor but one, prejudice to the Government, weighed against allowing Fitzmorris to withdraw his pleas. Fitzmorris claims that all seven elements of the *Bashara* test weigh in his favor, but his arguments are unconvincing.

**1.      Timing of Motion to Withdraw**

Fitzmorris pleaded guilty on January 29, 2007, but did not move to withdraw his pleas until May 30, 2007, on the eve of sentencing. The district court did not abuse its discretion in finding that

this four-month delay weighed against granting Fitzmorris's motion. Indeed, this Court has found delays less than four months to be excessive. *See, e.g.*, *United States v. Cinnamon*, 112 F. App'x 415, 418 (6th Cir. 2004) (three months); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (sixty-seven days); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (fifty-five days).

## 2. Failure to Withdraw Pleas Earlier

At the evidentiary hearing, Fitzmorris testified that, the very evening after entering his guilty pleas, he asked his attorney to withdraw them. Defense counsel testified and acknowledged that Fitzmorris asked to withdraw his pleas at some point, but also stated that on several other occasions, Fitzmorris "would go from being reluctant about entering a plea to desiring to cooperate." (08-4140 R. 216, Evidentiary Hr'g Tr. 31.) Defense counsel also testified that, due to an incident after Fitzmorris's change-of-plea hearing,[1] the Government informed him that it was unlikely to move for a downward departure because of the perception that Fitzmorris was untrustworthy.

The district court concluded that Fitzmorris delayed filing his motion simply because he was unsure whether to withdraw his pleas. The district court noted that Fitzmorris did not express any desire to withdraw his pleas when meeting with his probation officer, but instead submitted a written statement accepting responsibility for his acts. The court also observed that Fitzmorris filed his motion after he reviewed the PSR, which recommended a sentence of 35 years.

The record supports the district court's conclusion. Additionally, in a letter to his attorney dated March 18, 2007, Fitzmorris stated: "if we can't fix these crazy allegations . . . or if [the

---

[1]Following the hearing, Fitzmorris was found to have removed a round brass plate outlet cover from the courthouse and attempted to smuggle it back to his jail cell, wrapped in Saran Wrap.

prosecutor] and ATF are not willing to work with me . . . , I wish to withdraw my plea and have my trial!" (08-4140 R. 186, 2d Mot. Withdraw Plea, Attach. A, at 1.) At most, this letter shows that six weeks after entering his guilty pleas, Fitzmorris was having second thoughts based on the recommended sentence; it is not evidence that he pleaded with an "unsure heart and confused mind." *Bashara*, 27 F.3d at 1181. Thus, the district court did not abuse its discretion in weighing this factor against granting Fitzmorris's motion.

### 3. Assertion of Innocence

Fitzmorris claims that he maintained his innocence throughout the case, but the record belies his assertion. At his change-of-plea hearing, the district court went to great lengths to ensure that Fitzmorris understood each element of the charges and to ascertain the voluntariness and basis of his pleas. A few weeks later, Fitzmorris gave his probation officer the signed statement in which he accepted complete responsibility for his actions. On this record, Fitzmorris's position that he maintained his innocence throughout the case is untenable. The district court did not abuse its discretion in weighing this factor against him.

### 4. Circumstances Surrounding Guilty Pleas

Fitzmorris alleges that his attorney told him the maximum range for his crimes under the Guidelines would be ten years, and that he could expect the Government to file a motion to reduce this amount based on his cooperation. He claims that he did not see the Plea Agreement until the day of the hearing, and blames the district court for failing to discuss his potential sentence and the consequences of being deemed a career offender. At the evidentiary hearing, defense counsel acknowledged that he did not go over the Plea Agreement with Fitzmorris until the day of the

hearing. Defense counsel testified that although he could not recall the details of his conversation with Fitzmorris, it was his custom, when reviewing plea agreements with clients, to go over the likely sentencing range and discuss potential penalties. The district court held that, in light of the extensive negotiations surrounding the Plea Agreement, and given the court's painstaking efforts to ensure that Fitzmorris understood the consequences of pleading guilty, which included giving Fitzmorris time to consult with his attorney during the plea colloquy, this factor weighed against granting Fitzmorris's motion.

Upon review, we do not find that the district court relied on clearly erroneous findings of fact, or improperly applied the law. While it is preferable to provide plea agreements to defendants a few days early, Fitzmorris had the opportunity to review his pleas before formally entering them. Further, at the hearing itself, the district court gave Fitzmorris additional time to consult with his attorney and generally took special care to ensure that his pleas were competent, knowing and voluntary. The court did so because it was reluctant to accept Fitzmorris's pleas:

> Q. All right. I just – Mr. Fitzmorris, if you want to know the truth about it, I'm scared of accepting your plea, because I'm worried you're going to try to withdraw your plea of guilty later on based upon some reason that hasn't been disclosed here. And I've got to tell you, if you come back here and you try to do that, it's probably going to fall on deaf ears, because I'm trying to go through this plea as carefully as I can with you to make sure you understand it all. You understand?
> A. Yes.
> Q. All right. All right.

(08-4140 R. 198, Order Denying Mot. Withdraw Plea 8-9 (*quoting* 08-4140 R. 197, Change of Plea Hr'g Tr. 28-29).) As for Fitzmorris's allegation that defense counsel misled him about his likely sentencing range, the district court was in the best position to assess the witnesses' credibility at the

evidentiary hearing, and its decision to credit defense counsel's testimony was not unreasonable. The district court did not abuse its discretion in holding that this factor weighed against allowing Fitzmorris to withdraw his pleas.

### 5. Fitzmorris's Nature and Background

Fitzmorris argues that his displays of "shortsightedness," which include stealing a metal fixture from the courthouse on the day of his change-of-plea hearing and his escape and crime spree, should have convinced the district court that his pleas of guilty were neither deliberate nor thoughtful. However, this is simply one factor to be considered by the court. Moreover, to the extent that Fitzmorris suggests he lacked the mental capacity to plead guilty, the district court found him competent to stand trial in his escape and hostage-taking case, based on evaluations performed by two different forensic psychologists. The district court noted that Fitzmorris completed the tenth grade and obtained a general-education diploma, and observed that he responded appropriately to questions during the plea colloquy. The district court did not abuse its discretion in weighing this factor against Fitzmorris.

### 6. Experience with the Criminal Justice System

The district court found that Fitzmorris's lengthy record, which included eleven adult convictions in state court, rendered him intimately familiar with the workings of the criminal-justice system. Nevertheless, Fitzmorris submits that he had no experience in federal court before his drug and firearms cases. This Court rejected a similar argument in *United States v. Ford*, 15 F. App'x 303, 309-10 (6th Cir. 2001), where the defendant's prior criminal-justice experience consisted of two state-court convictions. The district court did not abuse its discretion in weighing this factor against

Fitzmorris.

### 7.    Prejudice to the Government

The district court found that the only factor weighing in Fitzmorris's favor was that the Government would not be prejudiced if he were allowed to withdraw his pleas. The district court based its finding on the fact that the Government did not offer any evidence of prejudice. However, "the government is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." *United States v. Goddard*, 632 F.3d 255, 261 (6th Cir. 2011) (*quoting United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987)). Since Fitzmorris failed to establish such a reason, this factor cannot be weighed against the Government. It is simply immaterial to the analysis. *Id.*

None of the *Bashara* factors supports allowing Fitzmorris to withdraw his pleas; therefore, the district court did not abuse its discretion in denying his motion.

### B.    Procedural Reasonableness

Fitzmorris argues that, when sentencing him in both cases, the district court mistakenly presumed that it could not depart or vary from the sentencing ranges provided by the Guidelines. On appeal, the procedural soundness of a criminal sentence is reviewed for abuse of discretion.[2]

---

[2]The Government argues that, instead of applying the abuse-of-discretion standard, this Court should review Fitzmorris's claim for plain error because he failed to raise it at sentencing. *See United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008) ("[P]lain-error review applies on appeal to those arguments not preserved in the district court.") (citation omitted). Fitzmorris responds that he objected to his classification as a career offender at both sentencing hearings, but does not explain how this challenge addressed the district court's alleged misapprehension of the Guidelines' advisory nature. The Court need not resolve this issue because Fitzmorris's challenge fails under the more lenient abuse-of-discretion standard.

*Gall v. United States*, 552 U.S. 38, 51 (2007).

The advisory nature of the sentencing Guidelines is beyond dispute. *See United States v. Booker*, 543 U.S. 220 (2005); *United States v. Lanham*, 617 F.3d 873, 889 (6th Cir. 2010). It is also well established that a district court commits procedural error by treating the Guidelines as mandatory. *Gall*, 552 U.S. at 51. However, on its own, the decision to sentence within the suggested Guidelines range is not evidence of error, as long as the district court provides an adequate explanation for the chosen sentence. *See id.*; *United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007) ("The district court must provide a clear explanation of why it has . . . chosen the particular sentence imposed, regardless of whether it is within or outside of the Guidelines.").

Fitzmorris analogizes this case to *United States v. Gillis*, 592 F.3d 696 (6th Cir. 2009), in which a district court erroneously construed the career-offender Guideline as mandatory. In *Gillis*, the district court's mistake was evident from the following statement, made at sentencing:

> the Court must note that the Sixth Circuit has clearly stated in the case of United States of America v. James M. Funk, . . . [477 F.3d 421 (6th Cir. 2007),] that a district court can not reject the legislator's policy behind career offender status. So *whether or not I agree or disagree with the career offender provision, the Court must apply it* if in fact the evidence is such that a defendant has sufficient convictions to be classified as a career offender.

*Id.* at 698 (emphasis added). On appeal, the Government conceded the district court's error; therefore, the only question was whether the district court's mistake was harmless.

The instant case differs from *Gillis* in that Fitzmorris offers no evidence that the district court regarded the Guidelines as mandatory. Both PSRs made clear the Guidelines' advisory nature, stating:

> [The] Supreme Court held in United States v. Booker and United States v. Fanfan (125 S. CT. 738), the Sentencing Guidelines are advisory. The guideline provisions contained in this section of the report are submitted to assist the Court in exercising its discretion under 18 U.S.C. §§3553(a)(1) through (a)(7).

(2006 PSR ¶ 130; Presentence Investigation Report for Escape Offense ¶ 139.) At the sentencing hearing on Fitzmorris's drug and firearms convictions, the defense requested a downward departure or a variance, noting that it was within the court's discretion to impose a sentence outside the career-offender range. And, at the second sentencing, the court expressly noted that the PSR's suggested sentence was merely a recommendation, adding: "it's entirely up to the Court what the sentence will be." (09-3207 R. 100, Sent. Tr. 42.) Finally, cognizant of its duty to fashion a sentence that is "sufficient, but not greater than necessary," the district court reviewed each § 3553(a) factor individually before concluding that a term of imprisonment within the Guidelines would best achieve the policies and purposes of sentencing, as set forth in § 3553(a)(2).

In both cases, the district court provided reasoned and thorough justifications for its sentences. *See United States v. Blackwell*, 459 F.3d 739, 773 (6th Cir. 2006). Because neither explanation hints that the district court considered the career-offender Guidelines to be mandatory, the court did not commit procedural error in sentencing Fitzmorris in either case.

### III. CONCLUSION

The district court's denial of Fitzmorris's motion to withdraw his guilty pleas in No. 08-4140 is **AFFIRMED**; Fitzmorris's sentences in Nos. 08-4140 and 09-3207 are also **AFFIRMED**.