**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Johnny Franklin PATRICK,**
**Defendant–Appellant.**

No. 92–5482.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 28, 1992.

Decided March 16, 1993.

James E. Arehart, Asst. U.S. Atty. (argued and briefed), Karen K. Caldwell, U.S. Atty., Office of the U.S. Atty., Lexington, KY, for plaintiff-appellee.

John K. West (argued and briefed), McCoy, Baker & Newcomer, Lexington, KY, for defendant-appellant.

Before: RYAN and SUHRHEINRICH, Circuit Judges; and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

Johnny Franklin Patrick appeals his sentence, imposed pursuant to the United States Sentencing Guidelines upon a conviction for marijuana trafficking in violation of 21 U.S.C. §§ 841(a)(1) & 846 and firearm possession in violation of 18 U.S.C. § 924(c). The major issues in his appeal are (1) whether the trial court erred in failing to give Patrick notice in advance of the sentencing hearing of the possibility that it would disregard the probation department's recommendation that two points be subtracted from the base offense level to reflect his acceptance of responsibility, and (2) whether the evidence supported a two-point increase to reflect Patrick's role in the offense. For the reasons stated below, we AFFIRM the sentence.

I

Patrick and a co-defendant, Clyne Wilford Carmack, were charged in October of 1991 with eight counts of marijuana distribution and the use of firearms during drug trafficking. Each pled not guilty. The government offered to dismiss four of the counts against Patrick in return for a guilty plea to the remaining four. Specifically, the offer required Patrick to plead guilty to the distribution of approximately eight kilograms of marijuana and to the use of a firearm during commission of a drug trafficking offense. On the morning of December 9, the date for which trial was set, Patrick decided to accept the offer. He admitted to the court that he had sold over eight kilograms of marijuana and that

he had carried a gun while doing so. He further stated that he understood that the probation department estimated his sentence on the four counts to which he was pleading guilty at 84 to 90 months. The court scheduled a sentencing hearing for March 3, 1992.

Immediately after the proceedings in Patrick's case were concluded, those in Carmack's case commenced. At this point, Patrick was removed from the courtroom, and his counsel, who did not represent Carmack, left the courtroom as well. In the ensuing hearing, Carmack pleaded guilty to three counts of the indictment. He testified, in response to questions of the court, that he performed various jobs around the house for Patrick, for which Patrick paid him $150 per week. He also testified that he helped Patrick to sell marijuana, and that for that aspect of his employment he received $50 to $100 per transaction.

Prior to Patrick's sentencing hearing, the probation department released the presentence report. The report recommended that the trafficking convictions under 21 U.S.C. §§ 841(a)(1) & 846 be assigned a base level of 14, in accordance with U.S.S.G. § 2D1.1(c)(15). The report further recommended that that level be increased by two points pursuant to U.S.S.G. § 3B1.1(c) to reflect Patrick's role as a leader or organizer in the offenses. Finally, the report recommended that two points be deducted from the offense level pursuant to U.S.S.G. § 3E1.1(a) to reflect Patrick's having accepted responsibility for his offense. The resulting offense level of 14, when combined with Patrick's criminal history category of III, resulted in a recommended sentence range of from 21 to 27 months. The report also noted that Patrick's firearm conviction under 18 U.S.C. § 924(c)(1), which prohibits the use or carrying of a firearm during and in relation to any drug trafficking crime, carried a mandatory five-year consecutive sentence. Accordingly, the report concluded by recommending that Patrick be sentenced to a total of 81 to 87 months.

The presentence report described a number of incidents that supported the recommendation that Patrick be deemed to have been a leader or organizer in the activity. These incidents included occasions on which Patrick was observed issuing instructions to Carmack and a third person, such as instructions to show marijuana to prospective customers, to look out for police, to count the proceeds of the sale, or to clean up the site of the transaction. The report also indicated that Patrick was observed giving Carmack a sum of money.

Patrick, surprised at the length of the sentence as calculated by the probation department, fired his counsel on February 4, and counsel then moved to withdraw. The court denied the motion to withdraw pending the appearance of substitute counsel and continued the sentencing hearing to March 6. By that date, Patrick had not yet found replacement counsel. Counsel nonetheless renewed his motion to withdraw, and the court granted it, giving Patrick ten days to retain alternate counsel. At this point, Patrick informed the court that he wanted to withdraw his guilty plea and stand trial on the indictment. The court stated that it was not inclined to grant such a motion. The judge explained,

> I don't take to people coming in here, Mr. Patrick, and holding their hand up and going under oath and admitting their guilt and then coming in later and taking the backwater and say[ing], "I lied, I want a trial." ... [Y]ou can't jerk a judge around like you are trying to do.

The court then gave Patrick ten days to formally move to withdraw his plea, but warned him once again that the motion might be denied.

Patrick, unable to retain substitute counsel, was appointed new counsel on March 19. On March 24 he formally moved to withdraw his guilty plea. The motion was set for hearing on March 30. At the hearing, Patrick claimed that he was innocent and that he had been lying when he admitted guilt.[1] He added that he had agreed to

---

**1.** Patrick changed his story yet again on cross-examination. When confronted with the spec-

ter of perjury charges, he stated that he had in fact been telling the truth when he described his

plead guilty to the firearm charge only in the hope that Carmack would thereby be absolved. He explained that he wanted to help Carmack because Carmack worked for him and because they were friends.

At the close of the hearing, the court informed Patrick of its inclination to deny the motion and to proceed with sentencing that afternoon. The court further informed Patrick of its inclination to disregard the probation department's recommendation that two points be deducted from Patrick's offense level to reflect his acceptance of responsibility.

Later that day, the court announced that it was denying the motion to withdraw the guilty plea, and it immediately commenced the sentencing hearing. During the sentencing hearing, Patrick objected to the recommendation that two points be added to the base offense level to reflect his role in the offense, and the government objected to the recommendation that two points be subtracted to reflect acceptance of responsibility.

The court overruled Patrick's objection and assigned a two-point increase to reflect Patrick's role in the offenses. In doing so, the court set forth the factual foundation for its finding that Patrick qualified as a leader. In the course of reviewing the evidence, the sentencing judge referred in passing to evidence obtained at Carmack's plea hearing. He noted, "I think that viewing Carmack and his performance before me, and then viewing Mr. Patrick, Mr. Patrick was clearly the leader. He was clearly the dominant force as compared to Mr. Carmack."

The court granted the government's objection and denied Patrick a downward adjustment for acceptance of responsibility. The court then sentenced Patrick to 99 months' imprisonment.

## II

Patrick argues first that the court should have given him notice in advance of the sentencing hearing that it might disregard the recommendation of the probation department that two points be deducted from the offense level to reflect Patrick's acceptance of responsibility. Second, he argues that the trial court improperly relied upon Carmack's testimony in finding that Patrick qualified as a leader.

### A

At the time of Patrick's sentencing hearing,[2] section 3E1.1(a) of the sentencing guidelines provided that, "[i]f the defendant clearly demonstrates acceptance of responsibility for his criminal conduct," the offense level is to be decreased by two points. The presentence report recommended such an adjustment, and the government filed no written objection. At the sentencing hearing, however, the government orally objected to the relevant portion of the report. The sentencing judge sustained the objection and refused to make the downward adjustment.

Section 6A1.3(a) of the sentencing guidelines provides that, "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." Subsection (b) provides that the resolution of disputes shall be accomplished in accordance with Rule 32(a)(1) of the federal rules.

Rule 32(a)(1) provides in relevant part that,

[p]rior to the sentencing hearing, the court shall provide the counsel for the defendant and the attorney for the government with notice of the probation officer's determination, pursuant to the provisions of subdivision (c)(2)(B), of the sentencing classifications and sentencing guideline range believed to be applicable to the case. At the sentencing hearing, the court shall afford the counsel for the defendant and the attorney for the government an opportunity to comment upon

drug trafficking activities to the court, but that he was nonetheless innocent.

2. Section 3E1.1(a) was subsequently amended to refer to the defendant's offense rather than to his criminal conduct.

the probation officer's determination and on other matters relating to the sentence.

Fed.R.Crim.P. 32(a)(1).

 Patrick argues that these provisions require a trial court to give a defendant advance notice of its intention to depart from recommendations contained in a presentence report and that the court's failure to so inform him prior to the sentencing hearing therefore requires resentencing. Patrick claims that the government's failure to object prior to the sentencing hearing to the presentence report's recommendation concerning a downward adjustment deprived him of notice that his acceptance of responsibility would be in issue.[3]

Patrick relies heavily on *Burns v. United States,* — U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). In *Burns,* the Supreme Court ruled that defendants must be given advance notice of a court's intention to depart from the guidelines. Specifically, the *Burns* Court ruled that, "before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling." — U.S. at ——, 111 S.Ct. at 2187.

Patrick's reliance on *Burns* is misplaced. The practice prohibited in *Burns* is distinguishable in several respects from the proceedings below. First, *Burns* involved an upward departure from the sentencing guidelines, while the instant case involves a refusal to make a recommended downward adjustment to a base offense level. Second, the presentence report in *Burns* did not mention the possibility of an upward departure, whereas the presentence report in this case specifically addressed the possibility of a downward adjustment. Third, the upward departure in *Burns* was made *sua sponte,* while here the government objected to the recommendation that the base offense level be adjusted downward. In sum, the defendant in *Burns* could justifiably complain that he was given no notice and opportunity to be heard. Patrick, who was given ample warning and a chance to speak, can make no such claim.[4]

Patrick urges this court to extend the holding in *Burns* so as to arrive at the proposition that, when a presentence report contains a recommendation that the base offense level be adjusted downward two points to reflect the defendant's acceptance of responsibility, the sentencing court may disregard that recommendation *only* if the defendant is notified of the possibility of such an outcome prior to the sentencing hearing.

In *United States v. Brady,* 928 F.2d 844 (9th Cir.1991), the Ninth Circuit reversed the sentence of a defendant because he had not been notified in advance of the sentencing hearing that there was a possibility that the sentencing court would disregard the recommendation of the probation department that the base offense level be adjusted downward to reflect acceptance of responsibility.

The government in turn relies on *United States v. McLean,* 951 F.2d 1300 (D.C.Cir. 1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1775, 118 L.Ed.2d 433 (1992), in which the D.C. Circuit, under circumstances very similar to those addressed here, affirmed the sentence of the district court. The *McLean* court reasoned that the favorable recommendation of the probation department

---

**3.** As a preliminary matter, Patrick claims that he had no notice that the sentencing hearing would take place when it did. As the government points out, however, the court had already continued the hearing three times, had already communicated its displeasure at Patrick's manipulative behavior, had already warned Patrick that his motion to withdraw the guilty plea would not likely be granted, and had indicated its intention before recess on the day of the hearing to proceed with sentencing that afternoon. Finally, the issue could be deemed waived on the grounds that Patrick did not object to it below. In sum, this claim does not merit sympathetic consideration.

**4.** Patrick's reliance on *U.S. v. Berzon,* 941 F.2d 8 (1st Cir.1991), is similarly misplaced. In *Berzon,* the First Circuit reversed a sentence where the sentencing judge, without informing the parties prior to or at the sentencing hearing, relied on information obtained at proceedings connected with a co-defendant.

does not relieve the defendant of the burden of proving by a preponderance of the evidence that he is entitled to a reduction.

■ The position urged upon this court by Patrick has some appeal. It is true that some unwary defendants might be lulled into a false sense of security by a presentence report that recommends a downward adjustment. Nonetheless, the government's position is more compelling for a number of reasons. First, as the *McLean* court recognized, the guidelines clearly put the burden of proof on the defendant to show acceptance of responsibility. The favorable recommendation of the probation department does not alter this, whether or not the government objects. Although a presentence report may recommend a reduction for acceptance of responsibility, the report's contents are just that—recommendations. Plainly, the final call must be made by the sentencing judge. Furthermore, we note that section 6A1.3(a) of the sentencing guidelines and Rule 32(a)(1) both guarantee the right of the parties to comment upon the recommendations contained in the presentence report. That right would be worth little if the presentence report were deemed dispositive unless objected to immediately.[5]

Finally, the approach we adopt is particularly appropriate where, as here, circumstances change between the drafting of the presentence report and the sentencing hearing. Where the defendant engages in conduct after the drafting of the presentence report that belies his acceptance of responsibility, and where that conduct persists (and perhaps grows even more unrepentant) up until moments before the sentencing hearing, it would defy logic to prohibit the government from objecting at the hearing to a recommendation that is no longer based on an accurate view of the circumstances.[6]

■ Our approach is not incompatible with *Burns*, which stands for the narrow proposition that a sentencing court may not *sua sponte* depart upward unless it first notifies the defendant of its intention to do so.[7] We acknowledge, however, that our position is at odds with *Brady*, which we decline to follow.[8] Upon consideration of the plainly divergent views of the Ninth and D.C. Circuits, we reject the Ninth Circuit's ruling in *Brady* in favor of the D.C. Circuit's ruling in *McLean*. Without doubt, a court will usually respect the recommendations of the probation department. It is, however, free to disregard those recommendations in light of information obtained from the parties in the form of written objections or evidence adduced or arguments presented at the sentencing hearing. Accordingly, we affirm the sentencing court's decision to sustain the government's objection to the presentence report's recommendation that two points be

---

5. We note also that Rule 32 describes the presentence report as "the probation officer's determination ... of the sentencing classifications and sentencing guideline range *believed* to be applicable to the case." (Emphasis supplied). This method of characterizing the presentence report indicates clearly that the recommendations contained therein are tentative.

6. Indeed, we find incredible Patrick's claim that he didn't realize that his acceptance of responsibility would be at issue. Since the recommendation was based upon his guilty plea, he must surely have known that an attempt to withdraw that plea would jeopardize his chances of receiving the reduction. If it didn't occur to him immediately, it must surely have dawned on him when the sentencing judge communicated his displeasure at Patrick's motion to withdraw.

7. Indeed, the *Burns* Court did not even go so far as to require notice in advance of the sentencing hearing, but rather left open the possibility that the notice requirement might be met simply by notice at the hearing. *See* —— U.S. at —— n. 6, 111 S.Ct. at 2187 n. 6.

8. We note also that *Brady*'s authority is at best limited. First, the remand in *Brady* was based as much on the trial court's failure to make specific findings of fact with regard to the issue as it was on the trial court's failure to provide advance notice. More importantly, the case appears to have been overruled *sub silentio* by *United States v. Palmer*, 946 F.2d 97, 100 (9th Cir.1991), where the Ninth Circuit affirmed a sentence notwithstanding the defendant's contention that he had received insufficient notice of the court's intention to disregard the probation department's recommendation that he receive an adjustment for acceptance of responsibility.

deducted from the offense level to reflect Patrick's acceptance of responsibility.

## B

■ The sentencing court adopted the probation department's recommendation that Patrick's offense level be adjusted upward two levels pursuant to section 3B1.1(c) of the sentencing guidelines, which provides that, "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than [one that involved five or more participants or was otherwise extensive]," the offense level is to be increased by two points. Patrick contends that, in deciding to adopt the probation department's recommendation, the sentencing judge improperly relied on information concerning Patrick's role in the offense adduced at Carmack's plea hearing. Patrick argues that he was not given a sufficient opportunity to challenge this evidence. Additionally, Patrick contends that, had the information upon which the sentencing judge relied been confined to information contained in the record, the evidence would have been insufficient to support a finding that Patrick was a "leader" as defined in the guidelines.

The government argues first that the sentencing judge did not in fact rely on information obtained at Carmack's hearing. The government characterizes the sentencing court's reference to evidence adduced at Carmack's plea hearing as but one small reference inserted at the end of a litany of recitals of evidence supporting the ruling, evidence the remainder of which was obtained solely in proceedings against Patrick. The government argues that the reference to Carmack's testimony and demeanor was more likely than not little more than an afterthought that had no discernible effect on the ruling.

We believe that for us to accept this position would require a distortion of the record as it exists before us. The sentencing judge clearly had Carmack's testimony in mind when he decided to overrule Patrick's objection to the presentence report. The sentencing court's ruling was based in part on the brief argument of the attorney for the government, which had its evidentiary basis exclusively in Carmack's testimony. Furthermore, the sentencing court appears to have been referring not only to Carmack's testimony but also to his demeanor as compared to that of Patrick.

The government next argues that, even if the sentencing court relied on evidence obtained in Carmack's plea hearing, Patrick should be deemed to have had constructive notice of that evidence and of the potential for reliance upon it by the sentencing judge. The government suggests that, where the related proceedings that form the source of the extraneous information follow immediately on the heels of proceedings in the case *sub judice*, and where the defendant's counsel "voluntarily elects to leave the proceeding," the defendant should not be heard to complain about a lack of notice.

We decline to recognize this sort of constructive knowledge. Were we to adopt the approach urged upon us by the government, defense attorneys would feel compelled to attend all related proceedings on the off chance that some evidence adduced therein might eventually be used against their clients. We think that criminal defense attorneys' time can be better spent than in such an endeavor. *See U.S. v. Berzon*, 941 F.2d 8, 17 (1st Cir.1991).

The government next argues that, even if the notice to Patrick concerning the sentencing court's reliance on extraneous evidence was inadequate, that "should not trouble this Court" because the record contained a sufficient quantum of properly admitted evidence to support the finding at which the sentencing judge arrived. The government argues, in other words, that, because the trial court would have arrived at the same result without relying on the extraneous evidence, any error was harmless.

■ Although we are wary of announcing a rule that impinges upon a criminal defendant's generally unqualified right to challenge the accuracy of evidence relied upon by the sentencing court, we agree that improprieties on the part of sentencing

judges are subject to review under the harmless error rule. We further hold that, in the circumstances of this case, any error was indeed harmless. This conclusion is based on a number factors. First, the other evidence already before the sentencing judge and a part of the presentence record fully supported the judge's ultimate finding that Patrick's role was that of a leader.[9] Patrick himself had testified that Carmack worked for him, albeit in a legitimate capacity. The trial court was fully justified in concluding that the same employment relationship characterized their trafficking activities. There was also evidence that Patrick was seen issuing orders to Carmack, and that, following the conclusion of one transaction, Patrick was observed handing a small sum of money to Carmack, while he, Patrick, retained the lion's share. This evidence was more than sufficient to support the sentencing court's finding that Patrick was the leader of the enterprise.

Second, and more importantly, advance notice of the potential for reliance upon the evidence to which Patrick objects would not have provided Patrick with any additional incentive or ability to challenge the accuracy of the evidence. To the extent that the sentencing judge relied on Carmack's testimony that he worked for Patrick, this evidence was cumulative, because Patrick himself admitted the existence of the employment relationship during earlier testimony. To the extent that the sentencing judge relied on a comparison of the demeanors of the two defendants, that evidence was essentially irrebuttable. Had the sentencing judge earlier notified Patrick that he intended to rely in part upon the fact that Patrick's bearing, as compared to that of his co-defendant, was that of a leader, it is difficult to see what evidence or arguments such a disclosure would have prompted Patrick to offer.

Patrick was aware that his role in the offense would be at issue, and was presumably prepared to challenge the probation department's recommendation at the sentencing hearing. Under such circumstances, Patrick already had an adequate incentive to present any evidence or arguments he could that would contradict the inference that he was a leader. *See U.S. v. Jordan*, 890 F.2d 968, 975 (7th Cir.1989) (noting that a "defendant and his or her defense counsel come to the final sentencing hearing prepared to seek the most favorable sentence possible, having been informed of the probation officer's recommendations").[10] Where the evidence upon which the sentencing court relies without previously notifying the defendant is of the same character, allows the same inferences, and, most importantly, is subject to the same arguments in rebuttal as evidence in the record of which the defendant is already aware, it seems logical to conclude that advance notice would not give the defendant any additional incentive or ability to challenge the evidence. *See U.S. v. DeBardeleben*, 740 F.2d 440, 447 (6th Cir.), *cert. denied*, 469 U.S. 1028, 105 S.Ct. 448, 83 L.Ed.2d 373 (1984) (upholding sentence based on extraneous evidence in part because the defendant did "not suggest what rebuttal he could make other than his blanket denial, which the court had already heard"). *See also United States v. George*, 911 F.2d 1028, 1029–30 (5th Cir. 1990) (holding that the defendant did not require advance notice where he could not show "how he was prejudiced by [late notice or] how he could have been helped by additional notice"). Accordingly, we hold that, because advance notice would not have given Patrick any increased incentive

---

9. Thus, to the extent that Patrick's brief can be interpreted as arguing that there was insufficient evidence to support the sentencing judge's finding, we disagree. Findings of fact made in the course of sentencing proceedings are reviewed only for clear error. *United States v. Williams*, 962 F.2d 1218 (6th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992). In this case, there was sufficient evidence in the record to support the judge's finding that Patrick had assumed a leadership role in the enterprise.

10. Two rules announced in *Jordan* were overruled in *U.S. v. Thompson*, 944 F.2d 1331 (7th Cir.1991), and *U.S. v. Andruska*, 964 F.2d 640 (7th Cir.1992), but the court's observation regarding the attitude with which convicted criminals approach sentencing hearings has never been called into doubt.

or ability to introduce evidence or make arguments in rebuttal, the sentencing court's failure to provide advance notice of its intention to rely on matters outside the record constitutes harmless error.

Our conclusion is buttressed by Patrick's counsel's reaction to the government's arguments at the sentencing hearing. As noted above, the government's argument in support of the enhancement was based exclusively on Carmack's testimony. When asked for his response, Patrick's counsel merely pointed out that it would naturally be in Carmack's interest to minimize his role. This observation seemed to be all that Patrick's counsel wished to contribute to discussion of the issue, and he offered nothing further. His failure to ask for a continuance to enable him to amass evidence to present in rebuttal supports this interpretation.[11] *See DeBardeleben,* 740 F.2d at 447 (noting that counsel's failure to ask for continuance suggests that no rebuttal was possible).

We are aware that our decision stands in some tension with *Berzon,* on which Patrick relies. Nonetheless, we are satisfied that this case is sufficiently dissimilar to merit different treatment. In *Berzon,* the defendant learned as the sentencing court announced its ruling that the court was possibly relying on evidence that was neither contained in the record nor even similar to any evidence that was. The First Circuit ruled that, under such circumstances, the case had to be remanded to the sentencing court for a determination of whether the court had relied on extraneous information. Here, although Patrick was not notified in advance of the sentencing hearing of the potential for reliance upon extraneous information, he was at least so informed at the hearing, and he was given an opportunity to address the evidence prior to the ruling on the issue. Furthermore, there is no indication that the extraneous

evidence relied upon in *Berzon* was of the same character as other evidence already contained in the record, an important consideration in this case. Accordingly, we decline to follow *Berzon,* and we affirm the sentencing court's decision to overrule Patrick's objection to the presentence report's recommendation that two points be added to the offense level to reflect Patrick's role in the offense.

AFFIRMED.

---

**11.** *A minute earlier, when the subject of the presentence report's recommendation of an increase in offense level was first breached at the sentencing hearing, Patrick's counsel used the words "I believe that the evidence would show that both he and Mr. Carmack were equal participants in any criminal conduct ..." His use of the word "would," which can be interpreted* as expressing the conditional mood, might indicate that he desired an opportunity, that he believed not to be forthcoming, to present evidence on this point. This is as close as he got to asking for a hearing on the matter, however, and when the court asked him to respond to the government's references to extraneous evidence, he did not take this tack again.