[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-11618
Non-Argument Calendar
_____

D. C. Docket No. 07-00343-CR-KOB-PWG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CURTIS LEE BRASFIELD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(November 21, 2008)**

Before ANDERSON, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Curtis Lee Brasfield appeals his 60-month sentence after pleading guilty to 1 count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On appeal, he raises the following two arguments: 1) the district court violated his due process rights and Fed.R.Crim.P. 32(i)(1)(C) by failing to disclose to defense counsel, before the sentencing hearing, a letter upon which it relied at sentencing; and 2) the district court's 60-month sentence, which was the result of an upward variance to twice the high-end of the applicable guideline range, was unreasonable under 18 U.S.C. § 3553(a).[1] For the reasons set forth below, we affirm.

## I.

A federal grand jury returned a single-count indictment against Brasfield, charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). At the plea hearing, the government proffered the following facts that it expected to prove at trial. On July 18, 2005, a law enforcement officer conducted a traffic stop of Brasfield. When Brasfield was ordered out of the vehicle, officers observed a .45 caliber semi-automatic pistol in plain view.

---

[1] There was a sentence appeal waiver in this case prohibiting Brasfield from appealing his sentence unless, inter alia, the court imposed an "upward departure" from the applicable guideline range. Although Brasfield received an upward variance under the 18 U.S.C. § 3553(a) factors rather than an upward departure under the Guidelines, we nonetheless review Brasfield's arguments on appeal because the government has not sought application of the waiver, has not filed a motion to dismiss the appeal, and has already briefed the case on the merits. United States v. Valnor, 451 F.3d 744, 745 n.1 (11th Cir. 2006).

Brasfield did not have a permit for the firearm and the authorities later learned that it had been reported as stolen. Brasfield had a prior felony conviction in Tuscaloosa County, Alabama, for possession of a controlled substance. Brasfield pled guilty to the charge in the indictment pursuant to a written plea agreement.

The probation officer prepared a pre-sentence investigation report ("PSI") and determined that Brasfield's applicable guideline range was 24 to 30 months' imprisonment based on an offense level of 13 and a criminal history category of IV. The statutory maximum sentence for his offense was 10 years' imprisonment, and he was not eligible for probation under the Guidelines.

The PSI contained the following information with respect to Brasfield's criminal history. He had one prior felony conviction for possession of a controlled substance in Tuscaloosa County in 2003. In addition to that felony conviction, however, Brasfield had several other convictions that were not felonies. In 1996, when Brasfield was 17 years old, he was convicted of possession and distribution of a small amount of crack cocaine. In 1997, he was convicted of disorderly conduct and criminal coercion in connection with a traffic stop, where he repeatedly threatened to kill the investigating officers "Texas style." In 1998, he was convicted of forgery. In 1999, he was convicted of driving with a suspended license. In 2000, he was convicted of carrying a firearm without a license. Also in

3

2000, Brasfield was convicted of possession of marijuana. In 2006, after the instant offense occurred, Brasfield was convicted of harassment for threatening to kill two law enforcement officers and their families. Brasfield was also convicted of various traffic-related offenses, such as reckless driving, "switching tags," and reckless endangerment and resisting arrest. The probation officer also listed the following five offenses for which Brasfield was charged but not convicted: assault domestic violence, distribution of controlled substances, reckless endangerment, carrying a firearm without a permit, and giving a false name and address to law enforcement.

The probation officer then summarized approximately 20 police reports describing incidents implicating Brasfield in criminal activity. Several of these incidents involved domestic violence against women and, on three occasions, the victims declined to press charges. Several incidents involved Brasfield's use or threatened use of a firearm, including: firing a shotgun at an ex-girlfriend, threatening to shoot a mother and her infant son, firing shots into an occupied building, threatening a couple with a firearm by shooting at their feet, shooting out the tires of a woman's car, shooting into an occupied vehicle, threatening to shoot another individual's car, and threatening to shoot a woman. Other incidents included the commission or attempted commission of armed robbery, burglary, and

4

kidnaping.

The probation officer recommended that the court impose a sentence above the high-end of the applicable guideline range based on Brasfield's criminal history. The probation officer noted that in many of the reported incidents described above, the victim initially agreed to press charges against Brasfield but subsequently declined to do so, thus implying that the victim had been threatened. He also pointed out that Brasfield was the leader of the Alberta City ("ABC") Boys, a gang in Tuscaloosa. The probation officer noted that, since 1995, Brasfield had been listed as a suspect in 33 cases and had been arrested at least 57 times by the Tuscaloosa Police Department, thus informing the probation officer's view that Brasfield had not been adequately deterred from engaging in criminal conduct. Significantly, the probation officer also stated: "It is noteworthy that the Tuscaloosa Chief of Police has recognized a drastic decrease in ABC Gang activity since the defendant's absence." Based on the above analysis, the probation officer recommended that the court vary upward to a sentence of 70 months' imprisonment.

Brasfield raised numerous objections to the PSI not relevant here. However, he did object to the assertion that he threatened any law enforcement officer in connection with the 2006 harassment offense, to which the probation officer

responded that the government planned to elicit testimony at the sentencing hearing in this regard. He also objected to the inclusion in the PSI of the five charges for which he was not convicted and the police reports implicating him in criminal activity. He did not object to the inclusion of the police chief's statement that there had been a drastic decrease in ABC gang activity since Brasfield's incarceration.

At sentencing, defense counsel declined the court's opportunity to offer any argument on his objections to the PSI, and the court overruled them. The court noted that it had consulted the advisory guidelines and, having overruled Brasfield's objections, adopted the factual findings and guideline calculations in the PSI.

The court stated that it had extensively reviewed the PSI, which was one of the longer ones it had seen, and noted that, while Brasfield only had one prior felony conviction, he had a very lengthy criminal history dating back to his 1996 conviction for possession of crack cocaine. The court pointed out that guns had been a part of Brasfield's life for awhile, as he had previously been convicted of carrying a firearm without a license. The court also emphasized the reports of domestic violence in the PSI for which Brasfield was not convicted and questioned whether Brasfield had prevented the victims from pressing charges through

6

intimidation. The court then stated that it had reviewed a letter written by the Tuscaloosa Chief of Police to the probation officer, where the police chief discussed Brasfield's criminal history and noted "the fact that since he has been arrested and incarcerated, the police have seen a drastic decrease in the criminal activity from the Alberta City's gang."[2] The court then noted that the incidents described in the PSI indicated that Brasfield had threatened other people and law enforcement officers, and the court stated that it could not ignore that conduct. The court again reiterated that, although Brasfield had only one prior felony conviction, he had engaged in other felonious conduct for which he could have been convicted had it not been for his victims' fear of pressing charges.

The court stated that it "ha[d] considered the sentencing factors of 18 U.S.C. Section 3553(a) and [found] that those factors outweigh[ed] the advisory guideline sentence." The court explained that it had considered the nature and circumstances of the offense and the history and characteristics of the defendant, stating that it "had just outlined [its] view of the history and characteristics of the defendant which, in [its] opinion, call[ed] for a higher sentence than called for under the guidelines." The court also stated that it had taken into account the need to reflect

---

[2] In the text of the letter, and after informing the probation officer about Brasfield's extensive criminal history, the chief of police wrote: "Since the arrest and incarceration of Mr. Brassfield [sic] we have seen a drastic decrease of criminal activity from the Alberta City's Gang." He also requested the court to impose the maximum sentence.

the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, emphasizing that Brasfield had a prior firearm conviction and that guns were particularly dangerous when "in the hands of people who have a propensity to threaten other people." The court also opined that it was clear from Brasfield's criminal history that he had no respect for the law and that it was "time that he learned that he is not above the law." With respect to deterrence, the court stated that Brasfield had long been engaged in criminal conduct for which there had been relatively little punishment, and it was therefore "time for him to face the consequences." The court then stated:

> I have also considered that an appropriate sentence is one that is necessary to protect the public from further crimes of this defendant. And it's my belief that until this defendant faces substantial punishment and reckons with his conduct, that the public needs protection from him.
>
> I cite the letter from the Chief of Police which indicates that the community has been much safer since his departure and I intend to provide the public with further protection from him.

Finally, the court stated that a "significant term of imprisonment" was necessary to provide Brasfield with effective correctional treatment.

Based on this analysis of the § 3553(a) factors, the court imposed a sentence of 60 months' imprisonment, finding it to be reasonable and sufficient but not greater than necessary to comply with the statutory purposes of sentencing.

Defense counsel objected to the court's consideration of the police chief's letter on the ground that he had not received it before the sentencing hearing and, therefore, could not challenge its contents. The court overruled the objection, finding the letter to be a mere summary of the criminal history contained in the PSI.

Although the court had already pronounced its sentence, it reconvened the hearing because police officers who were scheduled to testify on the government's behalf arrived in the courtroom. The government called two police officers with the City of Tuscaloosa Police Department, who testified that, in October 2006, upon responding to a report of gunfire, they encountered Brasfield who threatened to kill them and their families. After this testimony, the court noted that Brasfield had pled guilty to the harassment offense arising out of this incident, and that the officers' testimony added some detail to the PSI and confirmed the reasons the court had previously given for imposing its upward variance. The court also noted that the statutory maximum penalty was ten years' imprisonment and that, although it could have imposed such a penalty, it decided that five years' imprisonment was sufficient.

## II.

### A.    Due Process and Fed.R.Crim.P. 32(i)(1)(C)

"We review de novo constitutional challenges to a sentence, assuming they

9

are properly preserved." United States v. Brown, 526 F.3d 691, 708 (11th Cir. 2008), petition for cert. filed, (U.S. No. 08-5564) (July 28, 2008).[3]  The provision in Rule 32 on which Brasfield relies to support his due process argument provides: "At sentencing, the court . . . must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence."  Fed.R.Crim.P. 32(i)(1)(C).

In this case, defense counsel did not receive the police chief's letter before sentencing and the district court relied on the letter at sentencing.  Nonetheless, we decline to decide whether this constituted a violation of Rule 32(i)(1)(C) because, even if it did, it was harmless error.  See Fed.R.Crim.P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); United States v. Patrick, 988 F.2d. 641, 647-49 (6th Cir. 1993) (applying harmless error where the sentencing court failed to notify the defendant before sentencing that it would rely on extraneous evidence).[4]

This is so because the information contained in the police chief's letter was

---

[3]  There is confusion among the parties as to whether we should review Brasfield's argument for plain error.  However, because we reject Brasfield's argument under a de novo standard of review, we do not decide whether Brasfield sufficiently objected to the police chief's letter at sentencing.

[4]  We do note, however, that other circuits have held that this sort of failure to disclose violates Rule 32(i)(1)(C).  See, e.g., United States v. Warr, 530 F.3d 1152, 1161-63 (9th Cir. 2008); United States v. Meeker, 411 F.3d 736, 741 (6th Cir. 2005); United States v. Nappi, 243 F.3d 758, 762-68 (3d Cir. 2001).

also contained in the PSI, which defense counsel admittedly received and reviewed before sentencing. Although most of the letter refers to Brasfield's criminal history, the district court relied only on the following sentence in the letter: "Since the arrest and incarceration of Mr. Brasssfield [sic] we have seen a drastic decrease of criminal activity from the Alberta City's Gang." The court relied on this statement in analyzing the need to protect the public from further crimes by Brasfield. However, this statement is contained in the PSI, where the probation officer, in making his sentencing recommendation, states: "It is noteworthy that the Tuscaloosa Chief of Police has recognized a drastic decrease in ABC Gang activity since the defendant's absence." Defense counsel had the opportunity to object to this statement in either his written objections or at sentencing, but he failed to do so. In this respect, the Sixth Circuit has found harmless error under similar circumstances:

> Where the evidence upon which the sentencing court relies without previously notifying the defendant is of the same character, allows the same inferences, and, most importantly, is subject to the same arguments in rebuttal as evidence in the record of which the defendant is already aware, it seems logical to conclude that advance notice would not give the defendant any additional incentive or ability to challenge the evidence. Accordingly, we hold that, because advance notice would not have given Patrick any increased incentive or ability to introduce evidence or make arguments in rebuttal, the sentencing court's failure to provide advance notice of its intention to rely on matters outside the record constitutes harmless error.

11

Patrick, 988 F.2d. at 648-49 (citations omitted); see also Nappi, 243 F.3d at 771-72 (concluding that the defendant could not show that his substantial rights were affected under the third prong of plain error review in part because the information contained in an undisclosed state PSI, upon which the sentencing court erroneously relied, was "largely cumulative" to the information contained in the federal PSI). In sum, because the contents of the letter upon which the court relied were made available to defense counsel before sentencing, any error in failing to disclose the letter before sentencing was harmless.

## B.     Reasonableness of the Sentence

We review a defendant's sentence for reasonableness under an abuse-of-discretion standard. Gall v. United States, 552 U.S. __, __, 128 S.Ct. 586, 594, 169 L.Ed.2d 445 (2007). The party challenging the sentence "bears the burden of establishing that the sentence was unreasonable in light of [the] record and the factors in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

Brasfield essentially raises two arguments in his brief: 1) the district court did not adequately explain its variance; and 2) the district court did not consider all of the 18 U.S.C. § 3553(a) factors because it relied exclusively on his history and characteristics. We address these arguments in turn.

Brasfield first contends that the district court did not sufficiently explain the reasons for its variance. On this point, the Supreme Court in Gall stated:

> If [the district judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.

552 U.S. at __, 128 S.Ct. at 597. As explained below, although the court imposed a significant upward variance in this case, the court provided a sufficient and well-reasoned justification for it.

The court stated that it had reviewed Brasfield's extensive criminal history dating back to 1996 when he was 17 years old and convicted of distribution of a small amount of cocaine. It noted that Brasfield was previously convicted for carrying a firearm without a license and that guns had been part of his life for awhile. The court expressed concern over the reports of domestic violence and the implication that Brasfield, through intimidation, had prevented the victims from pressing charges. In this respect, the court noted that, although Brasfield had only one prior felony conviction, there was evidence of other felonious conduct for which he could have been convicted. The court highlighted the police chief's letter indicating that there had been a drastic decrease in the criminal activity of the ABC gang since his incarceration. The court explained that, in light of the

13

above discussion, Brasfield's history and characteristics called for a sentence above the guideline range.

The court then proceeded to analyze several of the § 3553(a) factors. The court emphasized that guns were particularly dangerous when in the hands of people who have the propensity to threaten others. The court further found that, in light of his criminal history, Brasfield had no respect for the law and had not been adequately deterred from engaging in criminal activity. The court highlighted again the statement from the police chief about the decrease in the ABC gang's criminal activity since Brasfield's incarceration and explained how this informed the court's view that substantial punishment was necessary in order to protect the public. The court also found that a significant period of imprisonment was necessary to provide Brasfield with effective correctional treatment. Finally, the court found that the testimony of the two Tuscaloosa police officers regarding the details of Brasfield's harassment offense confirmed its previous reasons for imposing an upward variance.

The court's above reasoning was specifically tied to the facts of Brasfield's case, namely his history of criminal activity, and was amply supported by the record. Although the court imposed a significant upward variance, it thoroughly explained why a sentence above the applicable guideline range was appropriate,

and there is nothing to suggest that the court abused its discretion in this regard.

Brasfield next argues that the court's sentence was unreasonable because the court relied too heavily on his history and characteristics and did not consider all of the § 3553(a) factors. "Gall makes clear that the district court is obliged to consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." Pugh, 515 F.3d at 1191 (quotation omitted). The factors in § 3553(a) that the court must consider are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

Talley, 431 F.3d at 786 (citing 18 U.S.C. § 3553(a)).

In Pugh, we discussed the argument that Brasfield advances here:

> Moreover, a district court's unjustified reliance on any one Section 3553(a) factor may be a symptom of an unreasonable sentence. Likewise, a sentence may be substantively unreasonable when the district court . . . fails to consider pertinent section 3553(a) factors.

> We hasten to add that while the application of these analyses may suggest an unreasonable sentence, they do not necessarily make a sentence unreasonable: Gall itself found that the district court did not commit reversible error simply because it attached great weight to a

15

> single factor. However, it remains uncontroverted that a sentence suffering from these symptoms <u>may</u> in fact be unreasonable, depending on an examination of the totality of the circumstances.

515 F.3d at 1191-92 (citations, quotations, and alterations omitted).

As an initial matter, Brasfield ignores the fact that the district court in this case expressly stated that it had "considered the sentencing factors of 18 U.S.C. Section 3553(a) and [found] that those factors outweigh[ed] the advisory guideline sentence." Moreover, as discussed below, the record confirms that the district court did consider the pertinent § 3553(a) factors.

First, the district court considered the nature, circumstances, and seriousness of Brasfield's offense. 18 U.S.C. § 3553(a)(1), (a)(2)(A). Although the court did not discuss the specific facts of his offense, the court emphasized Brasfield's historic involvement with firearms – especially his previous firearm conviction – and the fact that guns were particularly dangerous in the hands of those who have the propensity to harm others. In this respect, the court's statement was supported by the fact that numerous incidents described in the police reports involved Brasfield's actual or threatened use of firearms. Thus, although Brasfield's offense may have been a standard felon-in-possession offense, the court sufficiently considered the nature and seriousness of his offense in light of his historic involvement with firearms.

In addition, and as Brasfield concedes at one point in his brief, the court also considered the applicable guideline range. 18 U.S.C. § 3553(a)(4). The court stated that it had considered the advisory guidelines, clarified that Brasfield's guideline range was 24 to 30 months' imprisonment, and explained that it was imposing a variance above that range for the reasons explained above.

The court's consideration of the advisory guidelines also undermines Brasfield's argument that the court should have discussed the possibility that, under § 3553(a)(6), its variance might create sentencing disparities with other similarly situated defendants. This is so because the Supreme Court in <u>Gall</u> rejected a similar argument:

> As with the seriousness of the offense conduct, avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges. Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.

552 U.S. at __, 128 S.Ct. at 599. Furthermore, we have held that it is sufficient for the district court to acknowledge that it has considered the § 3553(a) factors, but it need not explicitly discuss each of them. <u>United States v. Scott</u>, 426 F.3d 1324, 1329 (11th Cir. 2005). Thus, the court's failure to specifically discuss the sentencing disparity factor is not fatal. In this respect, the present case does not represent an extreme situation like the one in <u>Pugh</u>, where the district court

17

imposed a non-custodial sentence for a child pornography offense, but failed to explain how this sentence would avoid creating "profound disparities with other similarly situated defendants" in light of the fact that we were unable to locate another child pornography case where the court imposed a non-custodial sentence. 515 F.3d at 1202-03.

With respect to § 3553(a)(5), Brasfield does not identify any "pertinent" policy statements that were applicable in this case. It is noteworthy, however, that there is a policy statement providing for an upward departure if the defendant receives an enhancement for his involvement in a criminal street gang under 18 U.S.C. § 521. U.S.S.G. § 5K2.18. Although this policy statement is inapplicable to Brasfield because he did not receive the § 521 enhancement, it appears to be the most relevant policy statement to this case and, due to Brasfield's involvement in the ABC gang, does not work in his favor. Thus, this case is again unlike Pugh, where the district court did not impose a period of supervised release, despite the fact that the Commission's applicable policy statement recommended the statutory maximum period of supervised release for sex offenders. 515 F.3d at 1199.

Finally, Brasfield does not explain how the court erred by not discussing the "kinds of sentences available" under § 3553(a)(3), as a non-custodial sentence of probation was not authorized in this case, and the court did find that a "significant

18

period of imprisonment" was necessary in order to provide Brasfield with the most effective correctional treatment.

Despite considering all of the pertinent § 3553(a) factors, Brasfield is correct that the district court relied primarily on his criminal history to justify its variance. However, this reliance was not "unjustified" under the facts of this case. See Pugh, 515 F.3d at 1191 ("Moreover, a district court's unjustified reliance on any one Section 3553(a) factor may be a symptom of an unreasonable sentence.") (emphasis added). The court commented that the PSI was one of the longest ones it had ever seen in light of Brasfield's lengthy criminal history. Similarly, in his recommendation, the probation officer explained at length why he believed that Brasfield's criminal history justified an upward variance of up to 70 months' imprisonment. Thus, the district court in this case did not ignore relevant factors, but rather justifiably focused its attention on the one outstanding aspect of the case, namely, Brasfield's criminal history. See Pugh, 515 F.3d at 1203 ("[T]he district court must give some weight to the factors in a manner that is at least loosely commensurate with their importance to the case . . . ."). Indeed, it would have been suspect had the district court not focused on Brasfield's criminal history. Furthermore, the government correctly points out that we have stated that it is in the district court's discretion regarding what weight to given to particular

19

factors.  See United States v. Amedeo, 487 F.3d 823, 832 (11th Cir.) ("The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors.") (quotations and alterations omitted), cert. denied, 128 S.Ct. 671 (2007).  Accordingly, and for the reasons set out above, Brasfield has not met his burden to show that his sentence was unreasonable.

## III.

In sum, any error committed by the district court in failing to disclose the police chief's letter before sentencing was harmless, as the contents of the letter upon which the court relied were contained in the PSI.  In addition, Brasfield has not met his burden to show that his sentence was unreasonable, as the district court sufficiently explained the reasons for its variance, considered all of the pertinent § 3553(a) factors, and justifiably relied on Brasfield's lengthy criminal history.  Accordingly, we affirm Brasfield's sentence.

**AFFIRMED.**

20