**NOT RECOMMENDED FOR PUBLICATION**
File Name: 11a0547n.06

**No. 10-3340**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 08, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| GREGORY LAMONT PRUDE, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  KENNEDY, SILER, and McKEAGUE, Circuit Judges.

**SILER**, Circuit Judge.  Defendant Gregory Prude pleaded guilty to conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841 and 846, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956.  At sentencing, the district court found between 1,000 and 3,000 kilograms of marijuana were relevant to the offense, relying in part on testimony from a separate hearing.  Prude now appeals, arguing that the district court erred when it considered that testimony.  For the reasons stated below, we **AFFIRM**.

I.

At his plea hearing, Prude admitted that, from late 2006 through 2007, he supplied co-conspirator Donald Dailey and others with marijuana.  He also admitted that he issued checks to Dailey drawn from the account of his contracting business in exchange for cash derived from Dailey's sale of marijuana.  The parties agreed that the conspiracy involved at least 50 kilograms of

marijuana, but intended to argue the total amount of marijuana that should be attributed to Prude at the sentencing hearing.

The district court conducted an evidentiary hearing in 2009 to determine the amount of marijuana that should be attributed to Prude. Artis Everman, who pleaded guilty to conspiracy to distribute marijuana, implicated Prude in at least 1,104 pounds of marijuana. Dailey testified that he observed Prude acquire 100 pounds of marijuana on one occasion; that he saw Prude with 1,200 pounds of marijuana on another occasion; and that he sold Prude 350 pounds of marijuana a month for 18 months, totaling 6,300 pounds. Dailey also testified that Prude allowed him to use his warehouse two or three times to unload 800 to 1,200 pounds of marijuana from trucks.

Agent Stephen Blunk testified that, during surveillance of Prude's warehouse, a truck was searched and $100,000 in cash was found. He also testified that a search of a van leaving the warehouse revealed approximately 1,200 pounds of marijuana. During the evidentiary hearing, Blunk relayed the truck drivers' testimony from the trial of a van occupant, stating that "[t]he truck drivers indicated during their testimony that they had delivered at least four times to that warehouse." Blunk also testified that, during the earlier trial, one of the truck drivers identified Prude as being present during a prior delivery. Prude admitted that he sold some marijuana, but he denied that he allowed the van occupants to deliver marijuana to his warehouse.

The court conducted a sentencing hearing about six months later. In determining the amount of marijuana attributable to Prude as relevant conduct, it specifically set forth all of the testimony discussed above, including that Dailey testified that he sold Prude what amounted to 2,800 kilograms of marijuana. The district court acknowledged that it had the benefit of hearing the truck drivers'

testimony from a prior hearing and noted that the truck drivers testified they made four deliveries to Prude's warehouse, including one where Prude was present. It expressly "incorporate[d] the testimony that it previously heard in those trials as well as Special Agent Blunk's testimony about what he observed going on at this warehouse." The district court thus found that Prude was responsible for 1,000 to 3,000 kilograms of marijuana as relevant conduct, resulting in a Guidelines range of 108 to 135 months.

During allocution, Prude denied knowing Everman or dealing with the persons who were arrested with marijuana after leaving his warehouse. The district court responded, "[B]ut do you understand that Mr. Dailey's testimony alone places you in the 2800 range . . . that alone is enough to place you in this higher range?" It then sentenced Prude to 100 months' imprisonment. Prude did not object to his sentence. He now appeals, challenging the district court's use of the truck drivers' testimony from the separate trial.

II.

Because Prude did not object to the district court's use of the truck drivers' testimony from the separate hearing, we review for plain error. *United States v. Meeker*, 411 F.3d 736, 741 (6th Cir. 2005).

Under Federal Rule of Criminal Procedure 32, the sentencing court must disclose most of the information upon which it relies. *United States v. Hayes*, 171 F.3d 389, 392 (6th Cir. 1999). Rule 32 gives the defendant "the right to review other information relied on by a court at sentencing," *id.*, and requires that the defendant have an opportunity "to comment on the probation officer's determinations and other matters relating to an appropriate sentence," Fed. R. Crim. P.

32(i)(1)(C). We need not decide whether Rule 32 was violated in this case because, even if it were, it did not affect Prude's substantial rights.

In the Rule 32 context, we generally will not reverse if "the other evidence already before the sentencing judge and a part of the presentence record fully supported the judge's ultimate finding." *United States v. Patrick*, 988 F.2d 641, 648 (6th Cir. 1993). Also, if the defendant has access to the information in preparing his appeal, he must explain how he could have "effectively rebutted" that evidence. *Meeker*, 411 F.3d at 742. Thus, "where a defendant has had an opportunity to review the evidence relied upon by the district court, an explanation of how the defendant was prejudiced is required." *Id.* In addition, a Rule 32 error is harmless if advance notice would not have provided the defendant "with any additional incentive or ability to challenge the accuracy of the evidence." *Patrick*, 988 F.2d at 648.

Here, the "other evidence already before the sentencing judge and a part of the presentence record" from Prude's evidentiary hearing "fully supported the judge's ultimate finding." *Id.* Indeed, the district court acknowledged that "Dailey's testimony alone places [Prude] in the 2800 [kilo] range" and "that alone is enough to place [Prude] in this higher range." Thus, regardless of the truck drivers' testimony, there was ample evidence to support the district court's determination that the amount of marijuana exceeded 1,000 kilograms.

Also, Prude never explained how he would have rebutted the truck drivers' testimony had he known that the district court was going to consider all of it. *See Meeker*, 411 F.3d at 742. Transcripts of the testimony of the two truck drivers were filed in the related case on August 14, 2009, before Prude's evidentiary and sentencing hearings. Prude could have accessed these publicly

available documents and ascertained what the outside information said. *Cf. Hayes*, 171 F.3d at 394

(reversing where the defendant had no way of seeing the evidence relied upon by the district court).

Because he had an opportunity to review the truck drivers' testimony when preparing his appeal,

Prude was required to explain how he was prejudiced. *See Meeker*, 411 F.3d at 742. Prude failed

to do so and therefore did not meet his burden of demonstrating that his substantial rights were

affected. *See id.*

Finally, advance notice would not have provided Prude "with any additional incentive or

ability to challenge the accuracy of the evidence." *Patrick*, 988 F.2d at 648. Since Prude knew that

the amount of marijuana involved in the offense was at issue, he had "adequate incentive to present

any evidence or arguments he could" to minimize the amount of marijuana that could be attributed

to him. *Id.* Moreover, Prude knew that the district court could consider some of the truck drivers'

testimony because it was elicited through Blunk at the evidentiary hearing. Prude was then given

the opportunity to contradict the truck drivers' testimony by denying that he knew his warehouse was

being used for marijuana deliveries. Therefore, the truck drivers' testimony from the separate trial

was "subject to the same arguments in rebuttal" as evidence of which Prude was aware. *Id.*

In sum, Prude was not prejudiced by failing to receive advance notice that the district court

would consider all of the truck drivers' testimony from the prior trial. *See id.* Thus, any error

committed by the district court did not affect Prude's substantial rights.

**AFFIRMED**.