**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1219n.06

No. 12-3015

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Nov 26, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF |
| MARSHA PARENTEAU, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | O P I N I O N |

BEFORE:     SILER, COLE and SUTTON, Circuit Judges.

COLE, Circuit Judge.  Marsha Parenteau pleaded guilty to conspiring to commit money laundering with her husband, his paramour, and his accountant, in violation of 18 U.S.C. § 1956(h). The district court imposed a 33-month sentence.  On appeal, Mrs. Parenteau argues that her sentence is procedurally unreasonable and that the district court committed reversible error when it failed to rule on a motion to enforce her plea agreement with the government.  We affirm.

**I.**

**A.**

Mrs. Parenteau and her co-conspirators engaged in a lucrative mortgage fraud scheme.  They made millions of dollars using fake documents to obtain ever-larger loans against their personal residences.  They also built luxury homes, sold them at well-above-market prices, and handed out kickbacks to buyers before laundering the proceeds.

The architect of this scheme was Thomas Parenteau, the defendant's husband. He exercised extensive control over the people and the shell companies involved. Mr. Parenteau evaded authorities with the help of his accountant, Dennis Sartain, who prepared falsified tax returns that concealed the proceeds of the scheme and generated massive refunds as a result. Four of these returns were filed for Pamela McCarty, a local real estate agent and Mr. Parenteau's paramour, who used the fraudulent refunds to obtain loans for illusory home purchases at Mr. Parenteau's direction.

Mr. Parenteau likewise drew his wife, the defendant, into the scheme. She agreed to serve as the nominal owner of several shell companies and signed off on related transactions. In addition, Mrs. Parenteau took a more active role in certain aspects of the scheme: she added McCarty as a signatory on her bank account for the sole purpose of qualifying McCarty for a $5,000,000 loan; she provided false verification of McCarty's employment to an inquiring loan officer; and she herself applied for and obtained a large refinance loan based on numerous misrepresentations. Mrs. Parenteau ultimately disclosed her participation in fraudulent loan transactions totaling $19,000,000 between 2003 and 2008. For her trouble, Mrs. Parenteau received monthly payments of $20,800 over this time. She returned more than half of the resulting income to her husband; in the end, she claims to have participated in the scheme for love and not for money.

**B.**

Based on this information, Mrs. Parenteau and the government entered into a plea agreement in April 2009. She pleaded guilty to one count of conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h). In return, the government agreed to recommend a three-point downward adjustment to Mrs. Parenteau's offense level for acceptance of responsibility and a four-

point downward adjustment for her "minimal role" in the conspiracy. The subsequent Sentencing Guidelines calculation yielded an advisory sentencing range of 24-30 months in prison. However, it later came to light that Mrs. Parenteau was more deeply involved in the scheme than the government initially believed. In May 2010, while testifying at her husband's trial, she admitted to participating in seven additional fraudulent transactions worth millions. Upon discovering this new information, the government changed its recommendation regarding her mitigating role adjustment to reflect a more significant "minor role," which warranted only a two-point reduction to the relevant offense level. Mrs. Parenteau responded with a motion to enforce the plea agreement.

But the changed recommendation mattered not. At sentencing, the district court rejected any mitigating role adjustment at all, finding instead that Mrs. Parenteau's participation in the conspiracy was substantial. The court explained that the amount of money flowing through her accounts and the number of documents bearing her signature belied any suggestion that she was less culpable than the average co-conspirator. Recognizing that the "very tragic relationship with her current husband . . . , no doubt, affected her behavior," the court nonetheless determined that their criminal activities "could have all been stopped if Marsha would have stood up and said, 'Tom, hell no; I know this is wrong, you know this is wrong, and it should have stopped.'" In so finding, the court relied in significant part on Mrs. Parenteau's revelatory testimony at her husband's trial. The court ultimately concluded that she had not met her burden of proving eligibility for a reduction under the Sentencing Guidelines. *See* U.S.S.G. § 3B1.2(b) (2010). Accordingly, it calculated her offense level at 21, which yielded an advisory sentencing range of 37-46 months in prison. The district court then imposed a 33-month sentence.

**II.**

On appeal, Mrs. Parenteau challenges her sentence on multiple grounds. She argues that her sentence is procedurally unreasonable for two reasons: the district court relied on testimony from another trial without giving her advance notice and it improperly denied her a mitigating role adjustment. She also argues that the district court committed reversible error when it failed to rule on her motion to enforce the plea agreement.

**A.**

The government contends that Mrs. Parenteau's appeal should not get off the ground because of the waiver provision in her plea agreement. It is well-established that a criminal defendant "may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004) (quoting *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001)). We review de novo whether a defendant has waived her right to appeal in any particular case. *See United States v. Murdock*, 398 F.3d 491, 496 (6th Cir.2005); *United States v. Swanberg*, 370 F.3d 622, 626 (6th Cir.2004). With limited exceptions, we will enforce a waiver if the defendant entered into it knowingly and voluntarily, and if the scope of the waiver extends to the grounds raised on appeal. *See United States v. Caruthers*, 458 F.3d 459, 470 (6th Cir. 2006); *United States v. Sharp*, 442 F.3d 946, 950-51 (6th Cir. 2006).

Under the terms of her plea agreement, Mrs. Parenteau waived "the right to appeal any sentence imposed by the [district court], . . . and the manner in which the sentence is determined, provided that the sentence is within the statutory maximum specified above and is constitutional . . . ." We have no reason to doubt that Mrs. Parenteau waived her right to appeal

knowingly and voluntarily. But even a knowing and voluntary waiver precludes only those appeals that are within its scope. *See Caruthers*, 458 F.3d at 470. Here, grounds not covered by the terms of the waiver include constitutional challenges or challenges that the sentence is more than the statutory maximum. We must therefore determine whether Mrs. Parenteau's appeal falls into one of these excepted categories. We conclude that Mrs. Parenteau's advance-notice argument is not barred because it falls into the former category, but all other arguments are barred because they do not fall into either.

Turning to the procedural reasonableness of her 33-month sentence, Mrs. Parenteau puts forth two distinct arguments: that the district court relied on testimony from her husband's trial without advance notice and that it wrongly denied her a mitigating role adjustment. Her advance-notice argument is, at its core, a constitutional challenge to the manner in which her sentence was imposed. Mrs. Parenteau explicitly states the district court's failure to notify her that it would rely on her trial testimony at sentencing deprived her of "her constitutional right to due process." Without notice, she did not have an opportunity to prepare a response or, in a more general sense, calibrate her strategy to account for the use of the outside testimony. *Cf. United States v. Patrick*, 988 F.2d 641, 644-46 (6th Cir. 1993). Because notice is a fundamental requirement of due process, it is no stretch to construe this argument as a constitutional one.

The remaining question, then, is whether it lies beyond the scope of the appeal waiver, which excepts contentions that the sentence is not constitutional. At first blush, this exception appears to encompass appeals that claim the district court imposed the sentence in a way that violates the Constitution. Interpreting the exception otherwise would manufacture a distinction between an

unwaived appeal of an unconstitutional sentence, on the one hand, and a waived appeal of a sentence imposed in an unconstitutional manner on the other. Such a distinction has little to recommend it—as both errors result in constitutional violations. A more sensible interpretation would reflect the terms of the waiver: including the "sentence imposed" and "the manner in which the sentence is determined." Thus, we think it best to read the waiver's exception for constitutional contentions to apply to both the sentence itself and the manner in which it was imposed. In any event, the language of the appeal waiver is ambiguous in this respect, and we resolve ambiguities in the plea agreement in favor of the defendant. *See United States v. Jones*, 569 F.3d 569, 571-72 (6th Cir. 2009); *see also United States v. Fitch*, 282 F.3d 364, 367 (6th Cir. 2002) ("Ambiguities in a plea agreement must be construed against the government."). We therefore conclude that the plea agreement does not foreclose our consideration of the advance-notice argument.

Mrs. Parenteau's second procedural reasonableness argument is that the district court erroneously denied any mitigating role adjustment whatsoever. Because this argument is in no way constitutional, it is covered by the terms of her appeal waiver and we therefore decline to address it on the merits.

Likewise, the other major grounds for Mrs. Parenteau's appeal—that the district court failed to rule on her motion to enforce the plea agreement—is covered by the waiver. Her opening brief did not frame the failure to rule on the motion as a material breach of the plea agreement, which would render the agreement (and any waiver contained therein) unenforceable. *See Swanberg*, 370 F.3d at 626-29. But even if she had, we find this argument unavailing. The government did not breach the agreement when it changed its recommendation after discovering Mrs. Parenteau's

participation in previously undisclosed transactions, nor would it have mattered because the district court clearly was not swayed by the breach, *see United States v. Keller*, 665 F.3d 711, 715 (6th Cir. 2011).

**B.**

We now consider the merits of Mrs. Parenteau's unwaived advance-notice argument. We generally review such procedural reasonableness challenges under the deferential abuse-of-discretion standard. *See Gall v. United States*, 552 U.S. 38, 49 (2007). However, in *United States v. Vonner*, we held that the particular issue underlying the assignment of procedural error is subject to plain error review if it is not presented to the district court. 516 F.3d 382, 391-92 (6th Cir. 2008) (en banc). Here, Mrs. Parenteau lodged no objection to the district court's failure to provide advance notice of its intent to rely on outside testimony at her sentencing hearing despite having ample opportunity. While she had no duty to object to the abstract reasonableness of her sentence at the time, *see id.* at 389, she did have a duty to present the advance-notice issue to the district court, *see id.* at 391. Because she neglected to object on this basis, Mrs. Parenteau may obtain relief only if the district court's error is "plain" and "affects [her] substantial rights." Fed. R. Crim. P. 52(b).

We conclude that the district court did not commit any error—much less plain error—in relying on testimony from Mr. Parenteau's trial without advance notice. As a general matter, trial testimony from a related proceeding may be used at a sentencing hearing "so long as there are sufficient indicia of reliability." *Logan v. United States*, 208 F.3d 541, 544 (6th Cir. 2000). We have little doubt that testimony given at a federal criminal trial meets this standard. The defendant is left arguing that error occurred solely because she could not prepare a response or plot a reactive

strategy. But Mrs. Parenteau herself gave the testimony at issue. It follows that she had actual knowledge of her participation in the undisclosed additional transactions the district court used to make its sentencing determination. She thus asks us to fault the district court for failing to provide advance notice of its intent to rely on relevant testimony she gave in a related criminal proceeding before that very court. Contrary to her assertions, neither Rule 32(i)(1)(B) nor our case law supports granting such a request. *See Patrick*, 988 F.2d at 648-49. Even if we did find an error—and we do not—it would be properly considered harmless because Mrs. Parenteau would not have done anything differently at sentencing given that she already knew of the facts underlying her own testimony, *see United States v. Meeker*, 411 F.3d 736, 742 (6th Cir. 2005), and because she fails to identify any evidence or arguments she could have offered in rebuttal, *see Patrick*, 988 F.2d at 648-49.

**III.**

For these reasons, we affirm Mrs. Parenteau's sentence.