NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0609n.06

No. 12-3176

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
*Jun 27, 2013*
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,    )
                                      )
    Plaintiff-Appellee,    )
                                        )
v.    )    ON APPEAL FROM THE UNITED
                                        )    STATES DISTRICT COURT FOR
THOMAS E. PARENTEAU,    )    THE SOUTHERN DISTRICT OF
                                        )    OHIO
    Defendant-Appellant.    )
                                        )

Before: DAUGHTREY, SUTTON, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. After a seven-week trial, a federal jury convicted Thomas Parenteau of money laundering and conspiracies to commit tax fraud, bank and wire fraud, money laundering, and obstruction of justice. Parenteau now appeals his conviction, claiming prosecutorial and judicial misconduct, violation of his right to self-representation, and his right against self-incrimination and wrongful introduction of evidence at trial. We affirm.

I.

Parenteau was a home builder in Dublin, Ohio. He owned a number of businesses with his wife, Marsha Parenteau. But Parenteau also had a girlfriend, Pamela McCarty; in 2001 he asked her to claim false deductions on her tax return. McCarty agreed and gave her unfiled return to Parenteau, who gave it to his accountant, Dennis Sartain. Sartain added to McCarty's return a $402,597 loss,

which resulted in a tax refund of almost $120,000. McCarty gave the refund to Parenteau so that he could become financially independent of Marsha and eventually divorce her. Parenteau, McCarty and Sartain repeated this same fraudulent scheme for the next three years, netting approximately $575,000 in refunds. McCarty continued to give Parenteau all of the refunds so that he could leave Marsha.

In 2003, Parenteau created a trust for the purpose of purchasing a home in Columbus, Ohio. He assigned McCarty as the trustee and purchased the home for $1.8 million. Later that year, Parenteau caused the trust to apply for a $5 million loan on the property. McCarty had lost her job that year, however, so Parenteau created a fictitious company to help McCarty secure the loan. Parenteau stated on the loan application that the company paid McCarty $70,000 per month. When a loan officer called to verify, Marsha lied about McCarty's employment and income. (A district court sentenced Marsha to 33 months' imprisonment for her participation in this scheme. *See United States v. Parenteau*, No. 12–3015, 2012 WL 5896561 (6th Cir. Nov. 26, 2012). Why Marsha chose to participate is beyond the record here.) McCarty received that loan in 2004 and again gave Parenteau the proceeds. Less than two years later, Parenteau and Marsha applied for a $10 million loan—claiming that they made $2.1 million annually—so that they could buy the Columbus home from McCarty for $15.5 million. Eventually, a bank approved them for a $12 million loan and disbursed $9 million to Parenteau.

Parenteau also created a mortgage-fraud scheme involving homes that he built. Parenteau would sell homes to buyers at falsely inflated purchase prices and the buyers would obtain inflated loans. For their participation in the scheme, Parenteau would give the buyers a kickback after the

purchase. The buyers would then default on the loan. This scheme created approximately $20 million in fraudulent mortgage loans.

In 2005, the IRS began investigating McCarty's tax returns. Parenteau and Sartain thereafter began shredding incriminating documents and creating new ones to validate the fraudulent schemes. Parenteau also convinced McCarty to pretend to cooperate with the government's investigation. She did so, providing false documents and telling lies to agents on 10 separate occasions.

On September 16, 2008, a federal grand jury indicted Parenteau and Sartain for obstruction of justice, witness tampering, and conspiring to defraud the United States, in violation of 18 U.S.C. §§ 1503, 1512, and 371, respectively. In June 2009 the grand jury issued a second superseding indictment that charged Parenteau with money laundering and conspiracies to commit tax fraud, bank and wire fraud, money laundering, and obstruction of justice, in violation of 18 U.S.C. §§ 1957, 371, 1349, 1956(h), and 371, respectively.

On the first day of trial—May 10, 2010—Parenteau invoked his right to represent himself. After a seven-week trial, the jury returned a guilty verdict as to all but two of the money-laundering counts against Parenteau. The district court thereafter sentenced Parenteau to 264 months' imprisonment. The court also ordered Parenteau to pay restitution for the tax and mortgage frauds.

This appeal followed.

II.

A.

Parenteau first argues that he was denied due process because, he says, the prosecutor made disparaging comments about him. Parenteau objected to only two statements below, however, so

we review those statements de novo and the rest for plain error. *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008).

We will not overturn a verdict on grounds of prosecutorial misconduct "unless the [] misconduct is so pronounced and persistent that it permeated the entire atmosphere of the trial, or so gross as probably to prejudice the defendant." *United States v. Davis*, 514 F.3d 596, 614 (6th Cir. 2008) (citation and alterations omitted). None of the statements that Parenteau complains about here—for example, that "I'd ask [Parenteau] not to threaten this witness in any manner"—remotely meet this standard. At most, the transcript shows a number of impatient—and in some instances gratuitous—comments by the prosecutor in response to Parenteau's failure to follow basic trial procedures during his self-representation. This claim fails.

So does Parenteau's next due-process claim, which is that the district court was biased against him. Apart from complaining about the district court's failure to "control" the prosecutor—a claim derivative of the one we have just rejected—Parenteau argues that the judge's evidentiary rulings show bias against Parenteau. But "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). This case is no exception: the challenged rulings (which excluded evidence on relevance grounds) were pedestrian.

Parenteau next argues that his due-process rights were violated when the district court denied him a continuance at various times during the trial, including after he invoked his right to represent himself. We review the district court's denial of a motion for a continuance for an abuse of discretion. *United States v. Crossley*, 224 F.3d 847, 854 (6th Cir. 2000). "Denial amounts to a constitutional violation only if there is an unreasoning and arbitrary insistence upon expeditiousness

in the face of a justifiable request for delay." *United States v. Gallo*, 763 F.2d 1504, 1523 (6th Cir. 1985) (quotation marks and citation omitted). Here, when Parenteau chose to represent himself, the district court had already granted a number of continuances that caused the trial to start 19 months after the grand jury issued the original indictment. Moreover, the district court went to great lengths to afford Parenteau access to the government's discovery and the 150 boxes of case-related documents that contained many of his personal records. Indeed, the court provided Parenteau with a laptop and set aside one of the cell blocks in the courthouse so that Parenteau could retrieve and review documents. The district court did not abuse its discretion with regard to the management of this trial.

B.

Parenteau next argues that the district court improperly admitted taped conversations between Parenteau and McCarty. These tapes contained discussions about the government's investigation and the pair's efforts to evade prosecution. The district court allowed the prosecutor to play the tapes at trial to prove the conspiracy to obstruct justice charge against Parenteau. We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Morales*, 687 F.3d 697, 701 (6th Cir. 2012).

Parenteau says the tapes' admission was error for three reasons. First, Parenteau contends that the recordings were protected by the joint defense agreement he entered into with his wife and McCarty. But the tapes were relevant, and a joint defense agreement here provides no reason to exclude them. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364–65 (6th Cir. 2007) (The joint defense privilege "should not be used as a *post hoc* justification for a client's impermissible

disclosures"). Moreover, McCarty had withdrawn from the agreement by the time of the relevant conversations.

Second, Parenteau contends that the recordings were not properly authenticated. Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." One way a party can do so is through the testimony of a witness with knowledge that the recording is what it is claimed to be. *See* Fed. R. Evid. 901(b)(1). McCarty's testimony satisfies this requirement.

Third, Parenteau contends that the district court should have admitted the entire recordings under Federal Rule of Evidence 106. This rule "allows a party to correct a misleading impression created by the introduction of part of a writing or conversation by introducing additional parts of it necessary to put the admitted portions in proper context." *United States v. Henderson*, 626 F.3d 326, 344 (6th Cir. 2010). But the rule does not allow a party to admit evidence that is otherwise inadmissible. *See United States v. Crosgrove*, 637 F.3d 646, 661 (6th Cir. 2011). Here, Parenteau loses on both points: the admitted portions of the tapes were not misleading (he does not argue otherwise), and the portions he says should have been admitted were inadmissible hearsay. *See United States v. Holden*, 557 F.3d 698, 706 (6th Cir. 2009). The district court did not abuse its discretion in admitting the recordings.

## C.

Parenteau presents two arguments relating to his counsel before he chose to represent himself. First, he says his retained counsel was ineffective due to a conflict of interest. We normally

do not review such claims on direct appeal, *see United States v. McCarty*, 628 F.3d 284, 295 (6th Cir. 2010); and suffice it to say there is no reason to depart from that rule here.

Parenteau's second claim relates to the lawyer whom the district court appointed for him after Parenteau fired his retained one. Parenteau asked the court to replace his appointed counsel two weeks before trial. The court refused. Parenteau now argues that the court violated his right to counsel in doing so. We review the court's decision for an abuse of discretion. *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007).

The argument is frivolous. Parenteau's motion—two weeks before trial—was untimely. *See United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999). Even so, the district court reviewed the motion, held a hearing to allow Parenteau to state his problems with his counsel, and issued a detailed order denying the motion. The record provides no basis for us to question any of the court's findings in that order.

The district court's judgment is affirmed.